889 F.2d 1317
 109 A.L.R.Fed. 311
 In the Case of ONE 1985 NISSAN, 300ZX, VIN:
JN1C214SFX069854; In the Case of: One 1985 BMW, 635si,
VIN: WBAEC8401F10611263; In the Case of: One 1985 Honda
Sabre Motorcycle, VIN: 1HSC1701FA104159; In the Case of:
Miscellaneous Jewelry, and Miscellaneous Electronic
Equipment From 5319 Old Branch Avenue, Temple Hills,
Maryland, Defendants.
In the Case of UNITED STATES of America, Plaintiff.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin WALKER, Personal Representative of the Estate of
Dennis White, Claimant-Appellant.
In the Case of: UNITED STATES of America, Plaintiff,
v.
MISCELLANEOUS JEWELRY and Miscellaneous Electronic Equipment
From 5319 Old Branch Avenue, Temple Hills
Maryland, Defendants.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin WALKER, Claimant-Appellant.
 Nos. 87-3856, 87-3873.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 7, 1989.
Decided Nov. 17, 1989.
 
 David Benjamin Smith (English & Smith, Alexandria, Va., Mitchell Myers, Silver Spring, Md., Dacy, Myers & Suissa, on brief), for claimant-appellant.
 Sara Bradkin Criscitelli (Breckinridge L. Willcox, U.S. Atty., Larry D. Adams, Asst. U.S. Atty., Charles B. Cates, Mary B. Troland, James G. Lindsay, Dept. of Justice, Washington, D.C., on brief) for plaintiff-appellee.
 Before ERVIN, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, MURNAGHAN, SPROUSE, CHAPMAN, WILKINSON, and WILKINS, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This appeal comes from a civil forfeiture action brought by the United States under 21 U.S.C. Sec. 881(a)(6). The government seeks property, primarily cash, with a value in excess of $1.5 million; it includes $1,002,219.48 in cash, $37,086 in checks, two pieces of real estate, 42 pieces of jewelry, 30 pieces of electronic equipment, and five automobiles. The property belongs to the estate of Dennis Constantine White.
 
 
 2
 On May 5, 1986, the police department of Prince George's County, Maryland, discovered the bodies of Dennis White and his daughter, Donna Marie White, in his residence in Temple Hills, Maryland. The police believe that White and his daughter were murdered. During the homicide investigation, the police discovered the cash, checks, jewelry and electronic equipment in the residence.
 
 
 3
 White was an alleged drug trafficker, reportedly a key figure in the importation of cocaine into the Washington, D.C. area. On June 26, 1986, the government filed complaints for civil forfeiture in rem against the defendant property, alleging that it constituted drug proceeds and, therefore, was forfeited to the government under 21 U.S.C. Sec. 881(a)(6). Alvin M. Walker filed claims to the property as personal representative of White's estate and as court-appointed guardian of four Jamaican minors who claim to be White's illegitimate daughters.[1]
 
 
 4
 The district court granted summary judgment in favor of the government and ordered the property forfeited. United States v. Miscellaneous Jewelry, 667 F.Supp. 232 (D.Md.1987). Walker filed timely notice of appeal to this court, and the district court granted a motion to stay execution of the judgment pending appeal. We affirm.
 
 
 5
 On appeal, Walker challenges the district court's grant of summary judgment on two grounds. First, Walker contends that civil forfeiture under Sec. 881(a)(6) is primarily penal in nature, and, as such, should abate on the death of the wrongdoer. Second, he contends that the interest of the heirs in White's property is protected from forfeiture under what is called the innocent owner provision of Sec. 881(a)(6). Walker also challenges the administrative forfeiture proceedings used against White's automobiles.
 
 
 6
 We are of opinion that Congress enacted Sec. 881 primarily to serve remedial purposes and thus hold that forfeiture under Sec. 881(a)(6) does not abate on the death of the property's owner. Further, we find the relation back doctrine embodied in 21 U.S.C. Sec. 881(h) applicable, and hold that all right, title and interest in the property vested in the government at the time the proceeds involved or traceable thereto were generated by illegal drug sales. At the time of White's death, therefore, he had no interest in the property to pass to his estate or heirs. We also uphold the government's use of administrative forfeiture proceedings against each of White's automobiles separately.
 
 
 7
 We can add little to the district court's sound analysis of the abatement issue. See 667 F.Supp. at 241-47. We agree that the decision on whether forfeiture under Sec. 881(a)(6) abates on death of the property owner depends on whether the provision is primarily civil or penal in nature. See United States v. Grande, 620 F.2d 1026, 1039 (4th Cir.1980). And we have only recently stated that the forfeiture provisions in Sec. 881 were enacted by Congress to serve strong remedial purposes in United States v. Santoro, 866 F.2d 1538, 1543-44 (4th Cir.1989). In Santoro, the claimant of the property raised several constitutional challenges to the forfeiture provision of Sec. 881(a)(7)[2] which were dependent on the statute being viewed as a criminal rather than a civil provision. We decided, however, that Congressional intent was clear that Sec. 881(a)(7) be construed as a civil provision. 866 F.2d at 1543-44. See also United States v. $2,500 in U.S. Currency, 689 F.2d 10, 13-14 (2d Cir.1982). We agree that Sec. 881(a)(6) is primarily civil in nature. Therefore, we hold that forfeitures under this statute do not abate on the death of the property's owner.
 
 
 8
 The second issue is with respect to the conflict between two portions of Sec. 881. Under Sec. 881(a)(6), innocent owners are exempted from the operation of the forfeiture statute. The statute states:
 
 
 9
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 
 
 10
 (6) All moneys ... [etc.] except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 Section 881(h), however, provides that:
 
 11
 All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.
 
 
 12
 The district court concluded that the government made the requisite showing of probable cause to believe that the seized property was the proceeds of illegal drug sales. Walker does not contest that finding. He contends, however, that as personal representative of the estate and guardian of the children, he is an innocent owner whose interest is exempt from forfeiture under Sec. 881(a)(6).
 
 
 13
 The government, in turn, does not contend that Walker or the children had any knowledge or involvement in White's drug activities. Instead, it relies upon the relation back doctrine,[3] codified at 21 U.S.C. Sec. 881(h) and quoted above.
 
 
 14
 The government's argument is this: Walker does not contest that the seized property is derived from the proceeds of illegal drug sales. At the time White sold the drugs, title in all the proceeds passed directly to the United States. Thus, at the time of his death, White did not own the property here in question to pass to his estate or to his heirs.
 
 
 15
 In such a case as this, where two parts of a statute may be in conflict, we should give effect, if possible, to each part and interpret them so that they do not conflict. Sutherland on Statutory Construction, Sec. 22.34 (Sands 4th ed. 1985).
 
 
 16
 In In Re Metmor Financial, Inc., 819 F.2d 446 (4th Cir.1987), we followed United States v. Stowell, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890), in considering the effect of the relation back doctrine and stated that under that doctrine "... no third party can acquire a legally valid interest in the property, from anyone other than the government after the illegal act takes place. The purpose of this rule was to prevent the offender from alienating the property prior to seizure and condemnation, and thereby escaping some of the consequences of his wrongdoing." 819 F.2d at 448 (italics in original). The holding in Metmor was that the government by forfeiture could not obtain an interest superior to that of a mortgage company which held the mortgage prior to the time the property involved became implicated in the acts concerning illegal drugs. The court did not consider whether the mortgage holder was an innocent owner who acquired his interest subsequent to the time of the illegal act.
 
 
 17
 White's personal representative and his children rely upon our case of United States v. $10,694.00 U.S. Currency, 828 F.2d 233 (4th Cir.1987), for their claims as innocent owners under Sec. 881(a)(6). In that case, a drug dealer, one Terry, had been taken to jail under suspicion of murder. Terry called his attorney, who went to the police station and agreed to represent Terry. Upon discussion of the attorney's fee, Terry told the attorney that he had some $12,000 in cash in his apartment which could be used as a retainer, and he gave the attorney permission to take the money from his apartment. When the attorney went to Terry's apartment, the police were there searching the apartment under a search warrant. The search revealed drugs, drug paraphernalia, a customer list, and some $12,000 in cash. The attorney subsequently obtained a written statement from Terry that he had assigned the funds to the attorney, and the district court found that this assignment took place on April 17th, the day the attorney saw Terry at the jail. On these facts, we held that the attorney was an innocent owner under Sec. 881(a)(6) and affirmed the judgment of the district court giving the money to the attorney rather than to the government as a forfeiture. While the relation back doctrine was not discussed in that case, it is implicit in the decision that the money was derived from the illegal drug traffic prior to the time Terry called the attorney to the jail to employ the attorney in the murder case.
 
 
 18
 $10,694.00 held that the standard to be used in determining whether a claimant is an innocent owner is a subjective rather than an objective standard, and we have no occasion to reconsider that holding. However, so far as the case may stand for the proposition that an innocent owner under Sec. 881(a)(6) may have acquired his interest subsequent to the act giving rise to the forfeiture, we do not agree. Instead, we follow the reasoning of Metmor that no third party can acquire a legally valid interest in the property forfeited from anyone other than the government after the illegal act takes place. The fair implication of this language is that unless a claimant has a claim to the property forfeited which existed prior to the time the acts take place which bring on forfeiture, then the innocent owner provision of the statute has no application. We are fortified in our reasoning by the recent case of Caplin & Drysdale, Chartered v. United States, --- U.S. ----, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989). In Caplin & Drysdale the Court, among other things, considered the validity of the forfeiture provisions in 21 U.S.C. Sec. 853(a) on account of a guilty plea by one Reckmeyer to drug-related continuing criminal enterprise charges. During the pendency of Reckmeyer's case, he had paid $25,000 to his attorneys, Caplin & Drysdale, for his defense, and the attorneys additionally claimed some $170,000 of Reckmeyer's assets for services rendered in the defense of the criminal charges against him. The claim of Caplin & Drysdale was that the forfeiture statute was invalid when measured against the sixth amendment to the Constitution, the theory being that if the government seized Reckmeyer's money, it would impair his ability to obtain counsel of his choice. The court held, however, that the forfeiture statute was valid and based its reasoning on the relation back doctrine. It relied on Stowell, as had we in Metmor, quoting that case as follows:
 
 
 19
 "The right [to the property forfeited] so vested in the United States could not have been defeated or impaired in any subsequent dealings of the ... [possessor]."
 
 
 20
 --- U.S. at ----, 109 S.Ct. at 2653. The Court then stated its own conclusion:
 
 
 21
 "Concluding that Reckmeyer cannot give good title to such property to ... [Caplin & Drysdale] because he did not hold good title is neither extraordinary or novel."
 
 
 22
 --- U.S. at ----, 109 S.Ct. at 2653.
 
 
 23
 Since Reckmeyer could not give good title to Caplin & Drysdale, it is apparent to us that White could not have given good title to anyone while living, including his children. So White's death certainly does not permit any greater property interest to pass than White would have been able to pass if living. Neither White's personal representative nor his children had any claim to any interest in White's property prior to the acts of White which gave rise to forfeiture, and for that reason the innocent owner provision of the statute provides no relief for them. The Tenth Circuit has so held in Eggleston v. State of Colorado, 873 F.2d 242, 247-48 (10th Cir.1989), as has a district court in Pennsylvania on facts indistinguishable from those present here. United States v. 6109 Grubb Road, 708 F.Supp. 698 (W.D.Pa.1989). The reasoning of the district court in the case at hand was also to that effect, 667 F.Supp. at 247. We agree with those cases and adopt that reasoning.4,5
 
 
 24
 Walker also contests the fact that the government commenced administrative forfeiture proceedings against each of White's five automobiles individually under 19 U.S.C. Sec. 1607. This statute allows the government to proceed administratively instead of judicially:
 
 
 25
 (a) If--
 
 
 26
 (1) the value of such seized vessel, vehicle, aircraft, merchandise, or baggage does not exceed $100,000....
 
 
 27
 (Emphasis added.)
 
 
 28
 Walker filed timely notices of claim for four of the vehicles as required under the administrative forfeiture provisions, but because of a mixup, he did not file a claim for one Mercedes Benz automobile until eight days after the deadline for filing notice had expired. The FBI refused to accept the late filing and refused remission or mitigation of the forfeiture. The other vehicle claims were consolidated with the judicial forfeiture proceeding.
 
 
 29
 Walker contends that implicit in 19 U.S.C. Sec. 1607 is a requirement that the government aggregate the values of all the items which it seeks to pursue in administrative forfeiture. The total value of the five vehicles exceeded $100,000.[6] The district court rejected this argument because the statute very clearly refers to the value of the vehicle, singular. As Walker noted, the only reported case dealing with this issue, Gutt v. United States, 641 F.Supp. 603 (W.D.Va.1986), supports the government's position. While notions of judicial and administrative economy might be served by requiring the government to proceed in the aggregate, we leave it to Congress to change the plain language of the statute.
 
 
 30
 The judgment of the district court is accordingly
 
 
 31
 AFFIRMED.
 
 MURNAGHAN, Circuit Judge, concurring:
 
 32
 The majority opinion holds, and I concur, that the innocent transferees from a drug dealer remained subject to forfeiture for the proceeds of drug activity. I concur, however, solely on the grounds that, while the children were "innocent," they were not innocent purchasers "for value" and thus cannot qualify for the "innocent owner" exception of 21 U.S.C. Sec. 881(a)(6).
 
 
 33
 I write separately because the majority has implied by dictum that even an innocent purchaser for value cannot escape forfeiture where the purchase occurs after the drug-related activity. I reject the view that 21 U.S.C. Sec. 881(h) forbids anyone from qualifying as an innocent owner if he or she acquired the money or property after the illegal transaction. Such an interpretation would seem impossible to square with the plain language of Sec. 881(a)(6) which expressly encompasses "proceeds traceable to ... an exchange " of controlled substances. How can one obtain drug deal proceeds before the transaction even takes place? I see no way to reconcile the language of Sec. 881(a)(6) with the majority's implicit interpretation of Sec. 881(h).
 
 
 34
 Great injustice would result if no one who obtained property once the drug transaction had occurred could qualify for the innocent owner exception in Sec. 881(a)(6). It seems manifestly unfair to penalize an innocent person who has provided something of value in exchange for property that, unbeknownst to him, had been used in or derived from drug trafficking. If a drug dealer should buy a car from a perfectly reputable auto dealership with proceeds from drug sales, apparently, under the majority's opinion, the government could use civil forfeiture to take away the money paid to the car dealer, even though the dealer was entirely unaware that he had sold the automobile to a drug dealer. I do not believe that Congress intended such a result. The most logical approach is to read Sec. 881(h) and Sec. 881(a)(6) as allowing, as an exception to retroactive forfeiture, bona fide purchasers for value to qualify as innocent owners exempt from civil forfeiture, even though the transaction post-dates the drug transaction. To the extent that the dictum in In Re Metmor Financial, Inc., 819 F.2d 446 (4th Cir.1987), suggests a contrary result, it should be disclaimed while we sit en banc.
 
 
 35
 I am authorized to state that Chief Judge ERVIN and Judge PHILLIPS join in this concurrence.
 
 
 
 [1]
 The government does not contest the relationship of the girls to White at this stage of the proceedings
 
 
 [2]
 Sec. 881(a)(7) provides for forfeiture of real property used in the drug trade
 
 
 [3]
 The relation back doctrine is an established doctrine of statutory construction recognized by the Supreme Court early in the nineteenth century. See United States v. Grundy, 7 U.S. (3 Cranch) 336, 348-54, 2 L.Ed. 459 (1806). Section 881(h) simply codifies this doctrine. See S.Rep. No. 225, 98th Cong., 2d Sess. 215, reprinted in 4 U.S.Code, Cong. & Ad.News 3182, 3383, 3398 (1984)
 
 
 [4]
 We have no occasion to consider a bona fide purchaser exemption to the forfeiture statutes. So far as the result of $10,694.00 may be considered inconsistent with our decision here, in view of this opinion and Caplin & Drysdale, it must be considered to have been overruled
 
 
 [5]
 Despite our reservation of the question in note 4 and the fact that there is no bona fide purchaser in this case, the concurring opinion is not satisfied because the majority will not flatly declare by way of dicta that a bona fide purchaser of property otherwise subject to forfeiture should be protected in each instance. We suggest that the concurrence over-simplifies what is indeed a somewhat complicated problem, and serves to emphasize our decision that the question should not be decided in a dictum
 In Weathersbee v. United States, 263 F.2d 324 (4th Cir.1958), the court gave literal effect to the relation-back doctrine and held that even a bona fide purchaser of an automobile, which was otherwise subject to forfeiture, did not have rights superior to the government which took under the relation-back doctrine. After Weathersbee came United States v. Reckmeyer, 836 F.2d 200 (4th Cir.1987), which did not mention Weathersbee, as the concurrence does not, but which held under 21 U.S.C. Sec. 853(n)(6)(B), enacted in 1984, that certain open account creditors of a narcotics dealer were bona fide purchasers under that statute and took ahead of the government in property otherwise subject to forfeiture.
 A decision deciding the relationship between Weathersbee, Reckmeyer, Sec. 853(n)(6)(B), and, indeed, whether Sec. 853(n)(6)(B) even applies in cases of civil forfeiture, we think, should not take place in the acknowledged setting of dicta.
 
 
 [6]
 The government disputes the claimant's valuation of the five vehicles. Our disposition of the case makes resolution of this factual dispute unnecessary