[No. 12166-6-III.   Division Three.   December 24, 1992.]

J.M.S. FARMS, INC., *Appellant*, v. THE DEPARTMENT OF WILDLIFE, *Respondent*.

*Albert J. Golden* and *Golden & Knowlton, P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Colleen G. Warren, Assistant,* for respondent.

SHIELDS, C.J. — A truck owned by J.M.S. Farms, Inc., was seized by the Department of Wildlife after it was used to transport a poached elk. Following a forfeiture hearing, the court held the corporation failed to establish the innocent owner exception to forfeiture. J.M.S. Farms appeals from that determination and the court's order of forfeiture. We affirm.

On June 20, 1991, Department of Wildlife agents served a search warrant on Stanley Long at J.M.S. Farms near Dayton based upon information he had illegally shot an elk. The agents recovered elk meat from the premises and elk hair from a 1990 Toyota pickup owned by J.M.S. Farms. Stanley admitted he killed the elk illegally and transported it to the farm in the company truck. The agents impounded the truck and served Stanley with notice of seizure and intended forfeiture pursuant to RCW 77.12.101. J.M.S. Farms petitioned for return of the vehicle.

A forfeiture hearing was held September 5, 1991. The issues before the court were whether the State had probable cause to seize the vehicle and, if so, whether the owner, J.M.S. Farms, could establish it was used without the owner's knowledge or consent. RCW 77.12.101, .103. Probable cause was established by Stanley's admission he used the truck to poach the elk. The focus of the hearing was the innocent owner defense.

The State established that J.M.S. Farms, Inc., is a family farm corporation. Stanley is the vice-president, owns 35 to 40 percent of the stock, and is a corporate director. He is employed by the corporation and lives and works on the farm. The remainder of the stock is owned by his parents, Melvin and Jackie Long, who are the president and secretary/treasurer respectively and the only other corporate directors. They live in town, but actively participate in the management of the corporation.

Department of Wildlife Agents Rick Webb and Morris Owen testified for the State, describing the search at J.M.S. Farms and the seizure of the truck. Agent Webb testified Stanley told him seizure of the truck would cause quite an inconvenience because he used the truck to transport his children to and from child care. He further testified Stanley told him when his father was informed of the seizure, Melvin replied "I told you so."

Agent Owen testified he met with Melvin and Jackie Long at their home on the evening of June 27, accompanied by Dayton Police Chief William Braun, and discussed the poaching incident with them. They also discussed an additional poaching incident, which occurred about 2 weeks earlier and involved the Longs' granddaughter and another company vehicle. Agent Owen testified Jackie Long admitted she knew about the illegal deer meat at her granddaughter's house. He further testified Melvin Long stated he had warned Stanley to stop poaching or he would get caught, excused his behavior as "just being a kid", and admitted to doing a little poaching himself when he was younger.

Melvin and Jackie Long both testified, denying any knowledge of Stanley's elk poaching until after he was caught. Melvin acknowledged telling Agent Owen he had poached when he was younger, but did not remember saying he had told Stanley to stop poaching before he got caught. Melvin initially testified J.M.S. Farms' corporate vehicles were for corporate use only, but admitted on cross examination Stanley used the truck to transport his children, and the car his granddaughter used to poach the deer was bought "for the family to use anytime they want to" even though it is registered to J.M.S. Farms. He acknowledged Jackie took the poached deer meat from their granddaughter and took it to relatives in Lewiston. It is unclear from her testimony when Jackie learned about her granddaughter's poached deer, but she acknowledged taking it to Lewiston.

Dayton Police Chief Braun was the State's rebuttal witness. He testified he independently remembered hearing Melvin Long tell Agent Owen he had previously told Stanley he had better quit poaching or he would get caught. At the close of the hearing the court found the State established probable cause for the seizure of the truck, but reserved ruling on J.M.S. Farms' innocent owner defense until counsel could provide case citations on analogous forfeiture provisions under state and federal drug statutes.

By memorandum opinion filed November 1, 1991, the court held the owner/corporation "must prove by a preponderance of the evidence not that they didn't know the vehicle was used to transport contraband, but they '. . . did everything reasonable to avoid having property put to an unlawful use.'" It then ruled J.M.S. Farms failed to meet its burden of proof. The court's findings and conclusions, and its order of forfeiture, were entered January 16, 1992. The corporation timely appealed.

J.M.S. Farms contends the court misconstrued the burden of proof required to establish the forfeiture exception for innocent owners under RCW 77.12.101(2)(d)(i), then erred in

finding J.M.S. Farms did not do everything possible to avoid having corporate property put to illegal use.

Under RCW 77.12.101(2)(d)(i), J.M.S. Farms must show Stanley used its truck for poaching without its "knowledge or consent". J.M.S. Farms argues it should have been permitted to prove *either* it had no actual knowledge its property was being used for illegal purposes *or* if it knew of such use, it did all that could reasonably be expected to prevent further illicit use of the property, citing *United States v. 141st St. Corp.*, 911 F.2d 870, 878 (2d Cir. 1990), *cert. denied*, 498 U.S. 1109, 112 L. Ed. 2d 1099, 111 S. Ct. 1017 (1991); *United States v. 5.935 Acres of Land, Tax Map Key (3)2-8-017-43*, 752 F. Supp. 359 (D. Hawaii 1990); *United States v. One Parcel of Property Located at Route 1, Box 137*, 743 F. Supp. 802 (M.D. Ala. 1990). The Department of Wildlife argues J.M.S. Farms should be required to prove *both* lack of knowledge *and* lack of consent, citing *United States v. One Parcel of Land, Known as Lot 111-B, Tax Map Key 4-4-03-71(4)*, 902 F.2d 1443, 1445 (9th Cir. 1990).

■ There are no Washington cases construing the RCW 77.12.101(2)(d)(i) innocent owner defense. Washington cases construing RCW 69.50.505(a)(4)(ii) and (a)(8)(i), the similarly worded innocent owner provision for drug-related forfeitures, do not address the initial issue presented here. *See Tellevik v. Real Property Known as 31641 W. Rutherford St.*, 120 Wn.2d 68, 838 P.2d 111 (1992); *Rozner v. Bellevue*, 116 Wn.2d 342, 804 P.2d 24 (1991); *State v. Michel*, 55 Wn. App. 841, 781 P.2d 496 (1989). Federal statute 21 U.S.C. §§ 881(a)(6) and (7) contains identical language providing innocent owners a defense against forfeiture of personal or real property, if the illegal acts involving the property occurred without the "knowledge or consent" of the owner. Federal cases construing those sections may be used for guidance. *See Clarke v. Shoreline Sch. Dist. 412*, 106 Wn.2d 102, 118, 720 P.2d 793 (1986).

As the parties point out, the innocent owner defense

harbors a latent ambiguity that has split the circuits. Some circuits hold that to avoid forfeiture a claimant must establish

*both* lack of consent *and* lack of knowledge. Others hold that even if a claimant has actual knowledge, the claimant may avoid forfeiture by establishing lack of consent. *See 141st Street Corp.*, 911 F.2d at 877-878 (collecting cases); *United States v. 8848 South Commercial Street, Chicago, Ill.*, 757 F. Supp. 871, 886 (N.D.Ill.1990) (discussion of various circuits' positions).

*United States v. One Parcel of Land Located at 7326 Hwy. 45 North*, 965 F.2d 311, 315 (7th Cir. 1992). The Second, Third and Eleventh Circuits have held claimants need only prove lack of knowledge or lack of consent. *141st St. Corp.*, 911 F.2d at 877; *United States v. Parcel of Real Property Known as 6109 Grubb Rd.*, 886 F.2d 618, 626, 110 A.L.R. Fed. 553 (3d Cir. 1989); *United States v. Certain Real & Personal Property Belonging to Hayes*, 943 F.2d 1292, 1296 (11th Cir. 1991).

In *6109 Grubb Rd.*, 886 F.2d at 625-26, the Third Circuit court held the connected words must be given their independent meanings, each constituting a unique element of the statutory provision. In *141st St. Corp.*, 911 F.2d at 878, the Second Circuit court held a claimant could prevail by proving either component of the defense, basing its reasoning on the ordinary meaning of the word "consent":

> Consent is "compliance or approval esp[ecially] of what is done or proposed by another." Webster's Third New International Dictionary 482 (1971). In order to comply with or approve of something, it is only common sense that one must have knowledge of it. Thus, in order to consent to drug activity, one must know of it. If we were to construe section 881(a)(7) to mean that a claimant's knowledge alone precludes the innocent owner defense (*i.e.*, that a claimant must disprove both knowledge and consent), then "consent" as used in the statute would be totally unnecessary. In other words, the factfinder would never reach the issue of consent once it concluded that the claimant had knowledge. Similarly, under this construction it would be necessary to determine whether the claimant consented only if the factfinder first concluded that the claimant did *not* have knowledge of the drug activity, a result that cannot be squared with the ordinary meaning of the word "consent."

*Accord, United States v. One Parcel of Real Estate at 1012 Germantown Rd.*, 963 F.2d 1496, 1503 n.3 (11th Cir. 1992).

As the Department of Wildlife points out, the Ninth Circuit has held a claimant must prove both lack of knowledge and consent. It did so, per curiam, in *Lot 111-B*, 902 F.2d at 1445, relying on a congressional joint committee report which suggests an intent to hold property subject to forfeiture if its owner either knew of or consented to illegal conduct. However, as the United States District Court, District of Hawaii, later pointed out in *5.935 Acres of Land*, 752 F. Supp. at 361-62, *Lot 111-B* was decided upon the plaintiff's lack of standing; thus, the requirement a claimant prove lack of both knowledge and consent was dictum. The court then declined to adopt the interpretation of the innocent owner defense expressed in *Lot 111-B* and adopted the position of the Second and Third Circuits: a forfeiture under 21 U.S.C. § 881(a)(7) fails if the claimant can prove *either* that he had no knowledge of the illegal activity *or* that he did not consent to it. *5.935 Acres of Land*, 752 F. Supp. at 362. The Department of Wildlife's position has little support in federal law; we decline to adopt it.

■ We interpret the plain words of RCW 77.12.101(2)(d)(i) to permit a claimant to establish *either* lack of knowledge *or* lack of consent. To establish the innocent owner forfeiture exception under RCW 77.12.101(2)(d)(i), J.M.S. Farms should have been required to prove lack of knowledge Stanley was using the corporate truck to poach elk. If it failed to prove lack of knowledge, J.M.S. Farms could still avoid forfeiture by proving lack of consent.

J.M.S. Farms contends the court's apparent misapplication of the innocent owner defense requires reversal. It argues because Melvin and Jackie Long testified they knew nothing of their son's illegal activities until after he was caught, they and the corporation had no actual knowledge; thus, forfeiture was improper. J.M.S. Farms further argues there is no basis for imputing Stanley's knowledge to the corporation because he was not acting within the scope of his employment. *See Standard Fire Ins. Co. v. Blakeslee*, 54

Wn. App. 1, 771 P.2d 1172, *review denied*, 113 Wn.2d 1017 (1989); *Plywood Mktg. Assocs. v. Astoria Plywood Corp.*, 16 Wn. App. 566, 575, 558 P.2d 283, 96 A.L.R.3d 1231 (1976), *review denied*, 88 Wn.2d 1014 (1977); *United States v. One Parcel of Real Estate Consisting of Approximately 4,657 Acres*, 730 F. Supp. 423 (S.D. Fla. 1989).

■ We first consider whether the corporation "knew" what Stanley was doing. The findings of fact do not contain a specific finding J.M.S. Farms had actual knowledge the corporate truck was being used for poaching. However, findings 7 through 10,[1] taken together, are equivalent to such a finding and support an inference of actual knowledge; the burden was on J.M.S. Farms to disprove knowledge. *United States v. Four Million, Two Hundred Fifty-Five Thousand*, 762 F.2d 895, 907 (11th Cir. 1985), *cert. denied*, 474 U.S. 1056 (1986). *See also 7326 Hwy. 45 North*, 965 F.2d at 315-16; *United States v. One Single Family Residence Located at 15603 85th Ave. North*, 933 F.2d 976, 982 (11th Cir. 1991); *United States v. $10,694.00 U.S. Currency*, 828 F.2d 233, 234-35 (4th Cir. 1987), *overruled on other grounds in In the Case of One 1985 Nissan, 300ZX*, 889 F.2d 1317, 109 A.L.R. Fed. 311 (4th Cir. 1989); *United States v. 1980 Red Ferrari*, 827 F.2d 477, 478 (9th Cir. 1987); *Tellevik*, 120 Wn.2d at 89. As long as the evidence supports a reasonable inference of actual knowledge, the owner's mere assertion of ignorance is insufficient to establish the defense of innocent ownership. *1980 Red Ferrari*, 827 F.2d at 480; *United States v. 8848*

---

[1]Findings of fact 7 through 10 provide:

"7. The corporation knew that Stanley Long used this vehicle to transport his child back and forth to school.

"8. The corporation authorized another family member to use a vehicle registered in the corporation[']s name for personal use.

"9. Melvin Long had told Stanley Long that 'he'd better quit poaching or he was going to get caught.'

"10. Melvin and Jackie Long were aware of a prior incident involving the transporting of an illegally taken deer by a family member in a corporate vehicle."

*South Commercial St.,* 757 F. Supp. 871, 884-85 (N.D. Ill. 1990).

■ Moreover, Stanley's knowledge of the illegal activity can be imputed to J.M.S. Farms. " 'Because a corporation operates through individuals, the privity and knowledge of individuals at a certain level of responsibility must be deemed the privity and knowledge of the organization else it could always limit its liability.' " *United States v. Real Property Located at 2011 Calumet,* 699 F. Supp. 108, 109-10 (S.D. Tex. 1988) (quoting *Continental Oil Co. v. Bonanza Corp.,* 706 F.2d 1365, 1376 (5th Cir. 1983)).

Here, Stanley Long was the vice-president, a 35 to 40 percent stockholder, one of three directors, the major employee and a resident at the farm. On these facts, his acts are the acts of the corporation, as is his knowledge.

Finally, J.M.S. Farms contends the court erred by requiring it to prove lack of consent by showing it did everything reasonable to avoid having its property put to an unlawful use, then ruling it failed to do so.

■ The federal circuits are also split on this issue. *See, e.g., 141st St. Corp.; United States v. Premises Described as Route 2, Box 61-C,* 727 F. Supp. 1295, 1299 (W.D. Ark. 1990); *United States v. One Parcel of Real Estate at 11885 S.W. 46th St.,* 715 F. Supp. 355, 357-58 (S.D. Fla. 1989); *2011 Calumet,* 699 F. Supp. at 110. However, in *Tellevik,* 120 Wn.2d at 88, Washington recently adopted the standard enunciated in *141st St. Corp.:* consent is defined as "the failure to take all reasonable steps to prevent illicit use of [the] premises once one acquires knowledge of that use". To meet its burden of proof, J.M.S. Farms needed to establish it had done everything reasonable to prevent further illegal use of the truck. The record reveals it did nothing. The court did not err in finding J.M.S. Farms failed to establish the innocent owner defense.

The court's order of forfeiture is affirmed.

THOMPSON and SWEENEY, JJ., concur.