**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 82166-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ABDULRIZAK ISAAC YUSUF, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — To convict a defendant of first degree voyeurism,

RCW 9A.44.115(2)(a)(i) requires that the defendant viewed the victim "without that

person's knowledge and consent." Abdulrizak Yusuf challenges his conviction for

first degree voyeurism, arguing the State failed to establish his victim did not know

he was viewing her. Understood within its statutory context, "without that person's

knowledge and consent" required that the State prove Yusuf's victim had not

knowingly consented to be viewed. Because the State established Yusuf viewed

his victim without her knowledge and consent, as used in the statute, substantial

evidence supports his conviction.

Yusuf's two other challenges are not persuasive.

Therefore, we affirm.

## FACTS

H.P. and her boyfriend went to an Auburn Burger King in late November of

2019 for food and for H.P. to use the bathroom. H.P. entered the women's

No. 82166-1-I/2

bathroom, went into one of the two adjacent stalls, and locked the door. No one else was in the bathroom. After beginning to use the toilet, she heard another person enter the bathroom and then saw person's feet in the adjacent stall were facing the toilet. H.P. was visible through the 14-inch gap between the floor and the bottom of the stall wall.

Abdulrizak Yusuf's face appeared upside down under the partition wall to H.P.'s bathroom stall, surprising her. Yusuf had bent down to look under the stall partition, putting his face beneath the partition. His face was close enough for her to touch it. Yusuf stared at her for about 10 seconds before she reacted. She told him he was in the woman's bathroom and needed to leave. Yusuf did not respond to her and instead looked "up and down [H.P.'s] body."[1] H.P. attempted to move her body "[j]ust, like, inward."[2] Yusuf stared at H.P. before beginning to raise his head back up "very slowly."[3] He left the bathroom after having looked at H.P. for about 35 seconds.

H.P. left the bathroom about one minute later. Yusuf was sitting in a booth. H.P. then spoke with Sapela Angie Iulio, the restaurant manager, to identify Yusuf and explain what happened. Iulio called the police to report the incident. Yusuf left, and Iulio could see him "hiding" outside the restaurant.[4]

---

[1] Report of Proceedings (RP) (Aug. 24, 2020) at 1160, 1176.

[2] Id. at 1158.

[3] Id. at 1155.

[4] Id. at 1117.

No. 82166-1-I/3

Several Auburn police officers arrived about 20 minutes later. Yusuf, still outside the restaurant, told one officer he had been in the women's bathroom "to take a piss."[5] After Officer Francesca Nix told Yusuf he was being arrested for voyeurism, Yusuf claimed to have been in the women's bathroom because H.P. propositioned him and had performed oral sex on him. Officers searched Yusuf's pockets and found a dozen unopened condoms, a rolled-up belt, and his driver's license. The officers needed the license to identify Yusuf because he had been giving them false names.

Several days later, Officer Douglass Faini began investigating the case. He called Burger King and asked for video surveillance footage from the day of the incident. Two days later, Iulio called and said the footage was ready. There were no cameras in the restroom, but cameras monitored the rest of the restaurant. Officer Christian Adams went to Burger King for the video footage. He watched the footage Iulio provided and concluded it was the wrong video because he did not see Yusuf in it. He did not watch any other footage because he was told that video was "all they had."[6] Officer Adams left without taking any footage, and he did not file a report about his visit.

The State charged Yusuf with one count of first degree voyeurism and one count of making a false statement to a public servant. Pretrial, Yusuf moved to suppress the evidence of the belt and condoms in his pockets. The court denied

---

[5] RP (Aug. 19, 2020) at 1006.

[6] Id. at 1077.

3

the motion.  In response to a motion to disclose all material evidence, the State said it had already done so.

During trial, H.P. testified about the incident.  Officer Adams testified about watching video footage at Burger King and deciding not to take it.  After both sides rested, Yusuf moved to dismiss the charges against him, arguing the State violated his constitutional right to discovery by not preserving the footage and by not disclosing the existence of the footage Officer Adams viewed.  The court denied the motion.  Yusuf also requested a missing evidence jury instruction as a remedy for the alleged violation.  The court declined to give the instruction.

The jury found Yusuf guilty of both charges.  He was sentenced to 15 months incarceration with 36 months of community custody.  He was also ordered to register as a sex offender.

Yusuf appeals.

ANALYSIS

I.  Substantial Evidence of First Degree Voyeurism

Yusuf argues the State failed to prove he committed first degree voyeurism. Whether the State proved every element of a charged crime presents a constitutional question that we review de novo.[7]

When a defendant challenges the sufficiency of the evidence, we review the evidence presented at trial in a light most favorable to the State to determine "if any rational trier of fact could have found the essential elements of the charged

---

[7] State v. Loos, 14 Wn. App. 2d 748, 765, 473 P.3d 1229 (2020) (citing State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

No. 82166-1-I/5

crime beyond a reasonable doubt."[8]  The State can prove its case using direct or circumstantial evidence, which have equal weight.[9]  A challenge to the sufficiency of the evidence "admits the truth of the State's evidence and all inferences that may be reasonably drawn from them."[10]  But "[i]nferences based on circumstantial evidence must be reasonable and 'cannot be based on speculation.'"[11]  Dismissal with prejudice is required when sufficient evidence did not support a conviction.[12]

Yusuf argues the State failed to prove he "viewed" H.P. because he did not look upon her for more than a brief period of time.[13]  An alleged voyeur "views" someone when they intentionally look upon "another person for more than a brief period of time, in other than a casual or cursory manner," using their own eyes or a device.[14]  H.P. testified Yusuf looked at her for about 35 seconds, which included running his eyes up and down her body even after she told him to leave.  Yusuf presents no authority that this length of time is, as a matter of law, not "more than

---

[8] Id. (internal quotation marks omitted) (quoting State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality op.)).

[9] State v. Fleming, 137 Wn. App. 645, 647, 154 P.3d 304 (2007) (citing State v. Thompson, 88 Wn.2d 13, 16, 558 P.2d 202 (1977)).

[10] State v. Stevenson, 128 Wn. App. 179, 192, 114 P.3d 699 (2005) (citing State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

[11] State v. Hummel, 196 Wn. App. 329, 357, 383 P.3d 592 (2016) (quoting State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013)).

[12] Loos, 14 Wn. App. 2d at 766 (citing State v. Devitt, 152 Wn. App. 907, 913, 218 P.3d 647 (2009)).

[13] Appellant's Br. at 12-13.

[14] RCW 9A.44.115(1)(e).

No. 82166-1-I/6

a brief period of time."[15]  Considered in a light most favorable to the State, a

reasonable juror could conclude Yusuf "viewed" H.P.

RCW 9A.44.115(2)(a) defines first degree voyeurism:

(2)(a) A person commits the crime of voyeurism in the first degree if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:

(i) Another person without that person's knowledge and consent while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy.[16]

Yusuf contends the State failed to prove the knowledge and consent

element because H.P. "did not describe any period of time where she was viewed

without her knowledge" that Yusuf was looking at her.[17]  The State argues it need

not "prove that [the viewing] was both unknowing and nonconsensual" because

RCW 9A.44.115(2) allows for a conviction when a defendant views another

"without knowledge or without consent."[18]  Neither argument is persuasive

because they do not adequately account for the context of the statute.

---

[15] See Fleming, 137 Wn. App. at 648 (concluding a voyeur "viewed" his victim when she "had enough time to see [him] looking at her [from over a bathroom stall wall], to yell at him, to tell him she had a cell phone, and to run out of the stall.")

[16] (Emphasis added.)  RCW 9A.44.115(2)(a)(ii) prohibits viewing, photographing, or filming "(ii) [t]he intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place."

[17] Appellant's Br. at 13.

[18] Resp't's Br. at 14.

No. 82166-1-I/7

We review issues of statutory interpretation de novo.[19]  We interpret statutes to identify and carry out the intent of the legislature as shown by the statute's plain meaning.[20]  A statute's plain meaning is shown by its own terms and by related statutes.[21]  "We assume the legislature 'means exactly what it says,'" and, therefore, cannot add or subtract from an unambiguous statute.[22]  But individual words should not be interpreted in isolation.  The plain meaning of two words used in sequence is sometimes more than the simplest and broadest meaning of those words when viewed individually.[23]  The plain and precise meaning of two words used in conjunction is part of the context recognized under the plain meaning rule.[24]  Thus, although we give criminal statutes "a literal and strict interpretation,"[25] a court should be "reluctant to accept

---

[19] State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007) (citing State v. J.P., 149 Wn.2d 444, 449, 69 P.3d 318 (2003)).

[20] J.P., 149 Wn.2d at 450 (citing Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999)).

[21] Id. (citing Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 11, 43 P.3d 4 (2002); State v. Clausing, 147 Wn.2d 620, 630, 56 P.3d 550 (2002) (Owens, J. dissenting)).

[22] State v. Delgado, 148 Wn.2d 723, 727, 63 P.3d 792 (2003) (quoting Davis v. Dep't of Licensing, 137 Wn.2d 957, 964, 977 P.2d 554 (1999)).

[23] State v. K.L.B., 180 Wn.2d 735, 742, 328 P.3d 886 (2014) (individual words should not be read in isolation); State v. Roggenkamp, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (the meaning of words may be indicated or controlled by those with which they are associated).

[24] K.L.B., 180 Wn.2d at 742; Roggenkamp, 153 Wn.2d at 623.

[25] Delgado, 148 Wn.2d at 727 (citing State v. Wilson, 125 Wn.2d 212, 217, 883 P.2d 320 (1994)).

7

No. 82166-1-I/8

literal readings with . . . 'strained consequences,' especially when they do not align with the statute's purpose and plain meaning of its text."[26]

The legislature enacted the voyeurism statute to protect public safety and general welfare by deterring the conduct being criminalized.[27]  The statute is unambiguous.[28]  Thus, our interpretation of the statute's unambiguous language cannot alter its terms[29] or undermine its purpose by adhering to a superficial, literal reading with strained consequences.[30]

The State interprets the statute by changing the phrase "knowledge and consent"[31] into "knowledge or consent."[32]  We presume the legislature uses "and"

---

[26] State v. Bergstrom, 199 Wn.2d 23, 37, 502 P.3d 837, 845 (2022) (quoting State v. Fjermestad, 114 Wn.2d 828, 835, 791 P.2d 897 (1990)).

[27] See State v. Boyd, 137 Wn. App. 910, 916, 155 P.3d 188 (2007) (analyzing RCW 9A.44.115(2) and noting its "'purpose is to promote safety and welfare'") (quoting State v. Glas, 147 Wn.2d 410, 422, 54 P.3d 147 (2002)).

[28] Fleming, 137 Wn. App. at 648.

[29] Delgado, 148 Wn.2d at 727 (quoting Davis, 137 Wn.2d at 964).

[30] Bergstrom, 199 Wn.2d 37 (quoting Fjermestad, 114 Wn.2d at 835).

[31] RCW 9A.44.115(2)(a)(i) (emphasis added).

[32] Resp't's Br. at 14.  We acknowledge Division III of this court interpreted RCW 9A.44.115 like the State.  State v. Stutzke, 2 Wn. App. 2d 927, 935-36, 413 P.3d 1037 (2018).  But we are not bound by decisions of the other divisions of the Court of Appeals.  State v. Smith, 17 Wn. App. 2d 146, 152, 484 P.3d 550 (2021) (citing In re Pers. Restraint of Arnold, 190 Wn.2d 136, 147-49, 154, 410 P.3d 1133 (2018)).  The Stutzke court's interpretation hinged on interpreting the phrase "without knowledge and consent" as "without knowledge or consent," 2 Wn. App. 2d at 935-36, but this articulation ignores the plain meaning of the critical phrase "without that person's knowledge and consent."  RCW 9A.44.115(2)(a)(i).  While we agree with the court's ultimate determination that voyeurism was committed when "all [of the viewing] occurred with the victim's knowledge but not consent," 2 Wn. App. 2d at 936, we decline to follow Stutzke's approach.  See Delgado, 148 Wn.2d at 727 (courts cannot subtract terms from an unambiguous statute) (quoting Davis, 137 Wn.2d at 964).  In addition, the Stutzke court concluded the inaccurate prepositional phrase "without knowledge and consent" modified the

8

No. 82166-1-I/9

as a conjunction.[33]  We read "and" disjunctively only when the legislature clearly

intended to do so.[34]  The State's interpretation is not persuasive.[35]  Adopting the

State's interpretation would let a person be convicted of first degree voyeurism

even if that person proved that the alleged victim had consented to being viewed

---

verb "views," 2 Wn. App. 2d at 935-36, when the accurate statutory phrase "without that person's knowledge and consent" is grammatically an adjectival phrase modifying the noun "[a]nother person's."  See The Chicago Manual of Style § 5.176, at 280 (17th ed. 2017) ("A prepositional phrase consists of a preposition, its object, and any words that modify the object.  A prepositional phrase can be used as a noun . . . an adverb . . . or an adjective (also called an adjectival phrase).").

 We also note that more grounded than the rules of grammar applied in Stutzke are De Morgan's laws of logic: "'[t]he negation of the conjunction . . . is . . . the disjunction of the negations,'" such that not (A and B) = (not A) or (not B).  Stephen M. Rice, Leveraging Logical Form in Legal Argument: The Inherent Ambiguity in Logical Disjunction and Its Implication in Legal Argument, 40 OKLA. CITY U. L. Rev. 551, 575 (2015) (alterations in original) (quoting IRVING M. COPI & CARL COHEN, INTRODUCTION TO LOGIC 365 (13th ed. 2009); LAWRENCE M. SOLAN, THE LANGUAGE OF JUDGES 49 (1993)).  But the rules of formal logic must be applied within the context of the statute to clarify a drafter's intent based upon the language used.  See Rice, supra, at 589 ("Due to the ambiguity in disjunction, the context within which the disjunction is placed is important: . . . 'Context matters.'" (quoting Schane v. Int'l Bhd. of Teamsters Union Local No. 710 Pension Fund Plan, 760 F.3d 585, 589-90 (7th Cir. 2014))).  Here, we focus on the context.

 [33] State v. Kozey, 183 Wn. App. 692, 698, 334 P.3d 1170 (2014) (citing State v. Tiffany, 44 Wash. 602, 603-04, 87 P. 932 (1906)); see Ctr. for Env't. Law & Policy v. Dep't of Ecology, 196 Wn.2d 17, 33, 468 P.3d 1064 (2020) ("As a default rule, the word 'or' does not mean 'and' unless legislative intent clearly indicates to the contrary.") (quoting Tesoro Refin. & Mktg. Co. v. Dep't of Revenue, 164 Wn.2d 310, 319, 190 P.3d 28 (2008) (plurality op.)).

 [34] Id. (citing Tesoro Refin., 164 Wn.2d at 319); State v. McDonald, 183 Wn. App. 272, 278, 333 P.3d 451 (2014) (citing Mount Spokane Skiing Corp. v. Spokane County, 86 Wn. App. 165, 174, 936 P.2d 1148 (1997)).

 [35] See Glas, 147 Wn.2d at 415 ("If the statute is unambiguous, as it is here, it is not subject to judicial interpretation and its meaning is derived from its language alone." (citing State v. Chester, 133 Wn.2d 15, 21, 940 P.2d 1374 (1997)).

9

without their knowledge.  Because this interpretation ignores the context, subtracts terms from an unambiguous statute, and results in strained consequences, it is unavailing.[36]

Yusuf argues the conjunction in "knowledge and consent" means the State is required to prove the victim was viewed completely without her knowledge and without her consent.  Thus, he asserts that the State cannot prove H.P. lacked knowledge because she was aware of him while he viewed her.  This unpersuasive conclusion relies upon a superficial, literal interpretation.

The statute's terms do not require that both knowledge and consent be absent simultaneously.  The only temporal requirement is that the defendant look upon the victim for "more than a brief period of time."[37]  Further, Yusuf reads the terms "knowledge" and "consent" as separate, individual facts whose absence the State must prove.  But this reading undermines the statute's deterrent and public safety purposes by preventing a conviction for first degree voyeurism where a victim is aware of the perpetrator the entire time they are being viewed but never consents to being viewed.  Because Yusuf's literal interpretation would undermine the statute's efficacy and public safety purpose, it is not persuasive.

RCW 9A.44.115(2)(a)(i) prohibits a person from "knowingly view[ing] . . . [a]nother person without that person's knowledge and consent."  The statute uses a possessive, thereby linking "that person" (the victim) with their "knowledge and

---

[36] Delgado, 148 Wn.2d at 727 (quoting Davis, 137 Wn.2d at 964); see Fleming, 137 Wn. App. at 648 (explaining "[t]he language of [RCW 9A.44.115] is plain and unambiguous.").

[37] RCW 9A.44.115(1)(e).

consent." And the use of a possessive with "knowledge and consent" means we assess the absence of knowledge and consent from the alleged victim's subjective perspective. Thus, we read "that person's knowledge and consent" as a whole rather than individual words in isolation.[38] Read together in context, rather than literally or in isolation, the term "knowledge and consent" means consent by the person being viewed as understood based upon that person's subjective knowledge of the precise activities anticipated to fall within the scope of the consent.[39] The legislature intended to protect people from being viewed surreptitiously without their knowing consent. Therefore, if the State shows either that the person being viewed lacked the full knowledge to consent before they were viewed, or if the State shows the person never consented, then it has proven this element of the voyeurism statute.

Here, the State presented evidence that Yusuf viewed H.P. without her consent. H.P. testified she told Yusuf to leave after she knew he was looking at her. This established she did not consent. In the absence of any consent, there is no need to construe the precise scope of any purported consent based upon

---

[38] K.L.B., 180 Wn.2d at 742 (citing Roggenkamp, 153 Wn.2d at 623).

[39] See J.M.S. Farms, Inc. v. Dep't of Wildlife, 68 Wn. App. 150, 155, 842 P.2d 489 (1992) (In the context of a statute requiring a party to disprove knowledge and consent, "[c]onsent is 'compliance or approval esp[ecially] of what is done or proposed by another.' WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 482 (1971). In order to comply with or approve of something, it is only common sense that one must have knowledge of it.") (emphasis added) (quoting United States v. 141st St. Corp., 911 F.2d 870, 878 (2nd Cir. 1990)).

No. 82166-1-I/12

H.P.'s knowledge.  Thus, the State presented sufficient evidence to establish H.P.

was viewed without her knowledge and consent under RCW 9A.44.115(2)(a)(i).

Because the State presented sufficient evidence to establish under

RCW 9A.44.115(2) that Yusuf viewed H.P. without her knowledge and consent,

and he does not challenge the other elements needed to convict, substantial

evidence supported his conviction for first degree voyeurism.

II.  Admission of Evidence

Yusuf argues the court abused its discretion by admitting evidence of the

dozen condoms in his pockets.  He contends both ER 403 and ER 404(b) barred

its admission.

As a threshold matter, the State contends Yusuf did not preserve the

ER 404(b) issue for review because his objection was limited to relevance and to

undue prejudice under ER 403.  Yusuf objected to admission of the condom

evidence under ER 401, 402, and 403, and he articulated the risk of "prejudice" in

the context of his ER 403 argument.  He did not object based upon ER 404(b).

But, relying on State v. Mason,[40] Yusuf argues an objection based only upon

prejudice is sufficient to preserve this issue for review.

In Mason, our Supreme Court explained "[a]n objection based on 'prejudice'

is adequate to preserve an appeal, based on ER 404(b), because it suggests the

defendant was prejudiced by the admission of evidence of prior bad acts."[41]  But

the facts of Mason limit this statement.  A defendant argued he was prejudiced by

---

[40] 160 Wn.2d 910, 162 P.3d 396 (2007).

[41] Id. at 933.

12

No. 82166-1-I/13

a range of admitted evidence.[42]  The Supreme Court affirmed this court's

conclusion that most of his objections were not preserved for review because his

objections at trial were based only on relevance.[43]  But it concluded the defendant

preserved the ER 404(b) issue for evidence about a past sexual encounter

because the prejudice objection was made after the trial court admitted the

evidence under ER 404(b).[44]  Thus, the preservation exception in Mason is limited

to circumstances when the general "prejudice" objection was made to the

admission of evidence under ER 404(b).

This rule is also illustrated in State v. Briejer.[45]  In Briejer, the State sought

to introduce evidence under ER 404(b) that the defendant participated in extreme

sports and was, therefore, lying when filing for worker's compensation.[46]  The

defendant objected, arguing the evidence was irrelevant and highly prejudicial.[47]

The court admitted the evidence under ER 404(b).[48]  The State argued the issue

was not reviewable because he did not expressly object under ER 404(b).[49]

Relying on Mason, the Briejer court concluded the issue had been preserved for

review.[50]

---

[42] Id. at 932-36.

[43] Id. at 933 n.6.

[44] Id. at 933-34.

[45] 172 Wn. App. 209, 289 P.3d 698 (2012).

[46] Id. at 216.

[47] Id. at 223.

[48] Id. at 222.

[49] Id. at 222-23.

[50] Id. at 223.

No. 82166-1-I/14

Here, unlike in Briejer, the Mason exception does not apply. The State sought to introduce Yusuf's possession of the condoms to prove an element of first degree voyeurism: that Yusuf viewed H.P. for the purpose arousing or gratifying his sexual desires. The trial court admitted the evidence for this purpose. Because ER 404(b) was not raised by either party or the court as a basis to introduce this evidence, Mason does not apply. Thus, Yusuf has not preserved the ER 404(b) issue for review under RAP 2.5(a) in absence of manifest error affecting a constitutional right. Because evidentiary errors under ER 404 are not of constitutional magnitude,[51] Yusuf has failed to preserve this issue for review.[52]

Yusuf argues the trial court abused its discretion under ER 403 by admitting evidence he had a dozen condoms in his pocket when he was arrested.[53] We review a trial court's decision to admit evidence for abuse of discretion.[54] A trial

---

[51] State v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009) (citing State v. Everybodytalksabout, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002)).

[52] RAP 2.5(a).

[53] Yusuf also argues the trial court misapplied ER 403 because it "fail[ed] to weigh or balance the prejudicial effect against the probative value" in its oral ruling. Appellant's Br. at 26. But "the rationale for requiring the trial court to weigh its decision on the record . . . is not present in the case of an ER 403 objection." Carson v. Fine, 123 Wn.2d 206, 223, 867 P.2d 610 (1994). Regardless, we assume the trial court makes admissibility decisions in response to the grounds stated after considering all pertinent arguments. State v. Giles, 196 Wn. App. 745, 759 n.6, 385 P.3d 204 (2016) (quoting ER 103(a)); State v. Johnson, 48 Wn. App. 531, 538, 740 P.2d 337 (1987)). Because the parties' briefing and oral arguments discussed ER 403 and the risk of prejudice, e.g., RP (July 30, 2021) at 46 (defense counsel urging the court to "think about the prejudicial value here versus the relevance"), Yusuf's argument is not persuasive.

[54] State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014) (citing State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003)).

14

No. 82166-1-I/15

court abuses its discretion when its decision is based upon untenable grounds or was made for untenable reasons.[55]

Yusuf contends the trial court abused its discretion because the condom evidence "had no permissible probative value," making its admission unduly prejudicial.[56]  But the State had to prove Yusuf viewed H.P. "for the purpose of arousing or gratifying [his] sexual desire,"[57] and evidence is relevant whenever it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[58]  Contrary to Yusuf's assertion, the presence of condoms in his pocket while allegedly committing a sex crime could be probative of whether he was sexually motivated.  Because the condom evidence was relevant, the question is whether that relevance was outweighed by the risk of unfair prejudice.

ER 403 allows exclusion of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice."  A court considers the whole case when weighing the risk of unfair prejudice, including

> "the importance of the fact of consequence for which the evidence is offered in the context of the litigation, the strength and length of the chain of inferences necessary to establish the fact of consequence, the availability of alternative means of proof, whether the fact of consequence for which the evidence is offered is being disputed,

---

[55] Id. (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

[56] Appellant's Br. at 27.

[57] RCW 9A.44.115(2)(a).

[58] ER 401.

15

and, where appropriate, the potential effectiveness of a limiting instruction."[59]

ER 403 permits prejudicial evidence and prohibits only unfairly prejudicial evidence.[60]  "Within its context, 'unfair prejudice' means an undue tendency to suggest a decision on an improper basis—commonly an emotional one."[61]

Here, the State had to prove Yusuf acted with a sexual motivation, and the condom evidence was probative of that essential element.  Yusuf did not dispute he had a dozen condoms in his pocket when arrested.  The State had only one other piece of evidence to demonstrate Yusuf acted with a sexual motivation: his statement to Officer Nix that H.P. had invited him into the bathroom for oral sex.  But the value of this statement was limited by the fact that no such encounter occurred.  The evidence had significant probative value.

Regarding prejudice, the fact of an adult carrying condoms is not, by itself, emotionally loaded.  Although the jury may have inferred from the condoms in his pocket that Yusuf was acting to arouse his sexual desires, the possible prejudice from this inference is not unfair because it does not provide an improper basis to find him guilty.  Yusuf fails to show the trial court abused its discretion by admitting evidence of the condoms.

---

[59] State v. Bedada, 13 Wn. App. 2d 185, 193-94, 463 P.3d 125 (2020) (quoting State v. Kendrick, 47 Wn. App. 620, 628, 736 P.2d 1079 (1987)).

[60] Carson, 123 Wn.2d at 224.

[61] State v. Cronin, 142 Wn.2d 568, 584, 14 P.3d 752 (2000) (quoting State v. Cameron, 100 Wn.2d 520, 529, 674 P.2d 650 (1983)).

III.  Missing Evidence Instruction

Yusuf argues the trial court abused its discretion by denying his request for a missing evidence instruction as a sanction for violating his constitutional right to discovery.  Specifically, he contends the State violated his right to discovery by not preserving and disclosing the Burger King video footage Officer Adams viewed and declined to collect.

"To protect a defendant's due process rights, the State has a duty to preserve and disclose exculpatory evidence."[62]  This duty extends only to material exculpatory evidence and to "potentially useful" evidence destroyed by the State in bad faith.[63]  Because Yusuf argues only that the video footage was potentially useful evidence,[64] his argument fails unless he can establish the State acted in bad faith.

Whether the State acted in bad faith is a question of fact that a defendant must establish.[65]  A defendant must "put forward specific, nonconclusory factual allegations that establish improper motive."[66]  Here, it is undisputed that the trial

---

[62] State v. Koeller, 15 Wn. App. 2d 245, 252, 477 P.3d 61 (2020) (citing State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994)), review denied, 197 Wn.2d 1008, 484 P.3d 1263 (2021).

[63] Id. (quoting State v. Armstrong, 188 Wn.2d 333, 345, 394 P.3d 373 (2017)).

[64] See Appellant's Br. at 22 ("The video was useful and potentially exculpatory evidence.").

[65] Koeller, 15 Wn. App. 2d at 253 (citing Armstrong, 188 Wn.2d at 345).

[66] Armstrong, 188 Wn.2d at 345 (quoting Cunningham v. City of Wenatchee, 345 F.3d 802, 812 (9th Cir. 2003)).

No. 82166-1-I/18

court found "no evidence before this court that the police acted in bad faith."[67]

Because he has not shown the State acted in bad faith and violated his due

process right to discovery,[68] Yusuf fails to demonstrate the trial court abused its

discretion by not providing a missing evidence instruction as a remedy for a

discovery violation.[69]

Therefore, we affirm.

_____

WE CONCUR:

_____          _____

---

[67] RP (Aug. 25, 2020) at 1241.

[68] Armstrong, 188 Wn.2d at 345 ("'[F]ailure to preserve by the police is not a denial of due process unless the suspect can show bad faith by the State.'") (quoting Wittenbarger, 124 Wn.2d at 477).

[69] See City of Seattle v. Lange, 18 Wn. App. 2d 139, 154, 491 P.3d 156 (remedy for an alleged constitutional discovery violation warranted only upon a showing of prejudice) (citing In re Pers. Restraint of Brennan, 117 Wn. App. 797, 805 P.2d 182 (2003)), review denied, 198 Wn.2d 1024, 497 P.3d 393 (2021).

18