[No. 19111-7-III. Division Three. July 5, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. SEAN TYLER GLAS, *Appellant*.

896

*Douglas F. Ricks*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Kevin G. Eilmes, Deputy*, for respondent.

SWEENEY, J. — Washington's voyeurism statute, RCW 9A.44.115, prohibits the photographing of a person without that person's knowledge and consent in a "place where he or she would have a reasonable expectation of privacy." The statute then defines one such place as "[a] place where one may reasonably expect to be safe from . . . hostile intrusion." RCW 9A.44.115(1)(b)(ii). Sean T. Glas was caught photographing up women's skirts at a public shopping mall in Union Gap, Washington. The State charged him with violating the voyeurism statute. He claims the statute is constitutionally defective because it is vague (what is a hostile intrusion). He also argues that, looked at facially (not as applied to him), it is overbroad. We conclude that the

statute passes constitutional muster. It is neither vague nor overbroad as applied here or facially. We therefore affirm Mr. Glas's conviction for violation of Washington's voyeurism statute.

## FACTS

Sean T. Glas took photographs under the skirts of two women. Both were employees at the Valley Mall in Union Gap. The State charged him with two counts of voyeurism. The pertinent statute defines voyeurism as taking photographs for the sexual gratification of any person in a place where the subject has a reasonable expectation of privacy and without the subject's consent. RCW 9A.44.115(2).

Mr. Glas argued that the women had no reasonable expectation of privacy in a public mall, and there was no evidence he was sexually aroused or gratified by his conduct. He moved to dismiss the prosecution. The court denied his motion.

After a bench trial, the court found that Mr. Glas took photographs up each woman's skirt without her consent or knowledge. Each woman had "a reasonable expectation of privacy while at her workplace to be free from non-consensual photographing up underneath her skirt." Clerk's Papers (CP) at 47, 48. The court found the photographs were hostile intrusions that violated the privacy interest and expectation of the women and that the pictures were taken to arouse or gratify sexual desire on an internet web site.

Mr. Glas was convicted of two counts of voyeurism. He appealed. Our commissioner refused to affirm on the merits based on the absence of prior judicial interpretation of the voyeurism statute and Mr. Glas's constitutional challenge.

## STATUTORY ANALYSIS

STANDARD OF REVIEW

■ The trial court's interpretation of a statute is a question of law which we review de novo. *State v. Avila*, 102

Wn. App. 882, 888, 10 P.3d 486 (2000), *review denied*, 143
Wn.2d 1009 (2001).

THE STATUTE

A person commits the crime of voyeurism if, for the purpose
of arousing or gratifying the sexual desire of any person, he or
she knowingly views, photographs, or films another person,
without that person's knowledge and consent, while the person
being viewed, photographed, or filmed is in *a place where he or
she would have a reasonable expectation of privacy.*

RCW 9A.44.115(2) (emphasis added).

(b) "Place where he or she would have a reasonable expecta-
tion of privacy" means:

(i) A place where a reasonable person would believe that he
or she could disrobe in privacy, without being concerned that
his or her undressing was being photographed or filmed by
another; *or*

(ii) A place where one may reasonably expect to be safe from
casual or hostile intrusion or surveillance[.]

RCW 9A.44.115(1) (emphasis added).

Mr. Glas disputes the court's interpretation of the statu-
tory definition of a place where a person has a reasonable
expectation of privacy. He contends that, as a matter of law,
the public area of a shopping mall is not such a place as
contemplated by the statute.

THE PROBLEM

Up-skirt video voyeurism is apparently a thriving
Internet business, with about a hundred web sites devoted
to up-skirt and other candid body shots of unsuspecting
female victims in public places. Professionals employed by
these sites and amateur contributors are part of a cottage
industry of stalking and secretly filming victims and dis-
seminating the images on the Internet. David D.
Kremenetsky, *Insatiable "Up-Skirt" Voyeurs Force Califor-
nia Lawmakers to Expand Privacy Protection in Public
Places*, 31 McGEORGE L. REV. 285, 287 (2000).

In most states, these voyeurs escape prosecution under outdated or nonexistent voyeurism statutes. Voyeur statutes that define voyeurism in outmoded terms of intrusion into "private" places, such as homes, changing rooms, or other like places, leave the video predator in public places free to pursue his victims with impunity. Lance E. Rothenberg, Comment, *Re-Thinking Privacy: Peeping Toms, Video Voyeurs, and Failure of the Criminal Law to Recognize a Reasonable Expectation of Privacy in the Public Space*, 49 AM. U. L. REV. 1127, 1145-46 (2000).

OTHER JURISDICTIONS

Many state voyeurism statutes are ineffectual, because they are mired in archaic, pretechnological concepts of the nature of privacy and the crime of voyeurism.

Some state statutes are couched in old-fashioned language about peeping toms. For example, in Delaware, a peeping tom is a trespasser who knowingly enters upon occupied property or premises. DEL. CODE ANN. tit. 11, § 820 (1996). In Georgia, a peeping tom is one who peeps through windows or doors. GA. CODE ANN. § 16-11-61 (1999). *See* Rothenberg, *supra*, at 1142 n.63.

Most state statutes prohibit nonconsensual viewing only in "private" places. These places are defined as dwellings and similar locations where people disrobe. These statutes do not prohibit up-skirt intrusions in public places where a reasonable person would not disrobe. Rothenberg, *supra*, at 1151-52.

A typical example is Florida, where a person commits the offense of voyeurism when he or she, "with lewd, lascivious, or indecent intent, secretly observes, photographs, films, videotapes, or records another person when such other person is located in a dwelling, structure, or conveyance and such location provides a reasonable expectation of privacy." FLA. STAT. ANN. § 810.14(1) (West 1999). In Indiana, a person who peeps or goes upon the land of another with the intent to peep into an occupied dwelling of another person, or who peeps into an area where an occupant of the

area reasonably can be expected to disrobe, including restrooms, baths, showers, and dressing rooms, without the consent of the other person, commits voyeurism. IND. CODE ANN. § 35-45-4-5 (West 1998).

A few states have enacted specific legislation targeting the precise problem presented here. For example, California criminalizes secret, nonconsensual filming under or through the clothing. Rothenberg, *supra*, at 1160. This has the advantage of focusing on the conduct instead of the place. The California statute is limited, however, by requiring that the victim be identifiable. *Id.* Most victims of up-skirt predators cannot be identified from the pictures. Kremenetsky, *supra*, at 291.

WASHINGTON

The question before us is whether Washington's voyeurism statute has avoided these pitfalls. We believe that it has. It has done so by defining not one, but two categories of places where people have a reasonable expectation of privacy.

■■■ We apply established rules of statutory interpretation to RCW 9A.44.115. We begin by determining and giving effect to the intent of the Legislature. *State v. Hansen*, 122 Wn.2d 712, 717, 862 P.2d 117 (1993). Whenever possible, we interpret a statute so as to render no part meaningless or superfluous. Different language signifies different intent. *State v. Jackson*, 137 Wn.2d 712, 724, 976 P.2d 1229 (1999); *Cazzanigi v. Gen. Elec. Credit Corp.*, 132 Wn.2d 433, 446, 938 P.2d 819 (1997); *Dep't of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982).

■■■ In RCW 9A.44.115, the Legislature described two categories of places where a person has a reasonable expectation of privacy. We must then try to interpret the statute in a way that gives meaning to both RCW 9A.44.115(1)(b)(i) and (ii).

First, the statute protects the traditional venue of the peeping tom—places "where a reasonable person would believe that he or she could disrobe in privacy, without

being concerned that his or her undressing was being photographed or filmed by another." RCW 9A.44-.115(1)(b)(i). As we read it, this includes places such as bathrooms, bedrooms, changing rooms, tanning booths— i.e., "private" places.

The Washington Legislature did not, however, stop there. It also gave us RCW 9A.44.115(1)(b)(ii). If it is not superfluous, this section protects places other than those protected in (b)(i), i.e., not "private" places where one would normally disrobe, but places where one would normally keep one's clothes on. The reasonable expectation of privacy protected in these places is, therefore, something other than the freedom to disrobe.

Read together, the plain language of RCW 9A.44-.115(1)(b)(ii) and RCW 9A.44.115(1)(c) (definition of surveillance) recognizes as reasonable the expectation to be free from secret observation, spying, and invasion of the "privacy of the person." When the private places specified in RCW 9A.44.115(1)(b)(i) are removed from consideration, what remains are nonprivate places—i.e., "public" places— where people remain clothed. Washington's protection from voyeurism is not then restricted to private places, and the expectation of privacy is not limited to the freedom to disrobe unobserved. If RCW 9A.44.115(1)(b)(ii) means anything at all, it criminalizes hostile intrusions upon the privacy of the clothed person in a public place.

People preserve their bodily privacy by wearing clothes in public and undressing in private. It makes no sense to protect the privacy of undressing unless privacy while clothed is presumed.

Our interpretation gives effect to a legislative intent to protect the right of people to control the exposure of their bodies to public view. The statute protects people, not places. *See Katz v. United States*, 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (saying the same thing about the Fourth Amendment). The privacy protection attaches when two conditions are met: first, a person exhibits a subjective expectation of privacy, and second,

that expectation is one that society is prepared to recognize as reasonable. *Id.* at 361 (Harlan, J., concurring); *see also* Rothenberg, *supra*, at 1139 n.56.

SEXUAL AROUSAL REQUIREMENT

■ Mr. Glas also contends the State failed to prove that he was sexually aroused or gratified by the offending conduct. We need not speculate on the nature of the evidence the State might have presented on that point. The statute requires only that the purpose of the behavior be to arouse or gratify in some manner some sexual desire of any person. RCW 9A.44.115(2). That commonsense reference followed from the evidence here, including Mr. Glas's statement that the photographs were ultimately destined for a pornographic Internet web site.

The court applied the statute correctly.

## CONSTITUTIONAL CONSIDERATIONS

Mr. Glas concedes up-skirt photography is not constitutionally protected. He presents instead a third party challenge to the statute, claiming it is unconstitutional on its face. He contends that it is unconstitutionally vague because it does not define the term "hostile intrusion." He contends this vague term renders the statute overbroad because it encompasses within its legitimate sweep conduct protected by the First Amendment.

VAGUENESS

■■ We presume this statute is constitutional. Mr. Glas then bears the burden of proving it is not, beyond a reasonable doubt. *See City of Seattle v. Eze*, 111 Wn.2d 22, 26, 759 P.2d 366, 78 A.L.R.4th 1115 (1988). Moreover, we add to this general presumption of constitutionality every presumption in favor of its constitutionality, because the purpose of RCW 9A.44.115 is to promote public safety and welfare, and the statute bears a reasonable and substantial relationship to that purpose. *See State v. Lee*, 135 Wn.2d 369, 390, 957 P.2d 741 (1998).

■ The due process clause of the Fourteenth Amend-

ment requires fair warning of proscribed conduct. *City of Seattle v. Montana*, 129 Wn.2d 583, 596, 919 P.2d 1218 (1996). A statute is not unconstitutionally vague merely because it cannot be predicted with complete certainty at which point conduct would be prohibited. *City of Seattle v. Abercrombie*, 85 Wn. App. 393, 399-400, 945 P.2d 1132 (1997). It is sufficient that a criminal statute defines the criminal offense with sufficient definiteness that ordinary people can understand what is proscribed, and that it provides ascertainable standards of guilt sufficient to preclude arbitrary enforcement. *Montana*, 129 Wn.2d at 596-97.

■■■ Undefined terms in a statute take their regular dictionary meaning. *State v. Yokley*, 91 Wn. App. 773, 959 P.2d 694 (1998), *aff'd sub nom. In re Personal Restraint of Yim*, 139 Wn.2d 581, 989 P.2d 512 (1999); *State v. McDougal*, 120 Wn.2d 334, 350, 841 P.2d 1232 (1992); *S. Martinelli & Co. v. Dep't of Revenue*, 80 Wn. App. 930, 938, 912 P.2d 521 (1996). Washington courts use *Webster's Third New International Dictionary* in the absence of other authority. *In re Personal Restraint of Well*, 133 Wn.2d 433, 438, 946 P.2d 750 (1997).

■■■ Among the dictionary meanings of "hostile" are: (1) "of or relating to an enemy"; (2) "marked by malevolence and a desire to injure"; (3) "marked by antagonism or unfriendliness"; (4) "adverse to the interests of an owner or possessor of property." WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 1094 (1993). *Black's Law Dictionary* defines "hostile" in the same way: "Having the character of an enemy; standing in the relation of an enemy." BLACK'S LAW DICTIONARY 738 (6th ed. 1990). The legal connotations include being antagonistic in the context of a hostile witness, and conduct adverse to ownership interests in the context of adverse possession. *Id.*

An "intrusion" is an "[a]ct of wrongfully entering upon or taking possession of property of another." BLACK'S LAW DICTIONARY 823. *Webster's* definition of "intrusion" includes

an "unwelcome bringing in or entering." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1187.

If the statute employed the term "hostile intrusion" to mean something other than its commonly accepted meaning and failed to define it, Mr. Glas might have a point. However, Mr. Glas does not contend this. An ordinary person would understand that the clothing of strangers represents a boundary beyond which any uninvited intrusion would be hostile. Even the most literacy-challenged citizen would be led inexorably to the conclusion that surreptitiously photographing under the skirt of an unsuspecting store clerk, even in a public mall, is both *hostile* and an *intrusion*. And any doubt is easily resolved by consulting an ordinary dictionary.

OVERBREADTH

 The general rule is that one cannot rely on hypothetical conduct in urging the unconstitutionality of a statute, but must be adversely affected by the statute challenged. *State v. Lundquist*, 60 Wn.2d 397, 374 P.2d 246 (1962). When a statute's overbreadth is alleged to violate the First Amendment, however, the rule does not apply. Hypotheticals may be used to demonstrate the alleged overbreadth. *Blondheim v. State*, 84 Wn.2d 874, 876, 529 P.2d 1096 (1975). A criminal statute that regulates conduct is facially overbroad in violation of the First Amendment only if it prohibits a substantial amount of constitutionally protected conduct beyond its legitimate scope. *City of Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989).

RCW 9A.44.115 is a criminal statute that regulates conduct. Mr. Glas must, therefore, demonstrate substantial overbreadth. Mr. Glas simply fails to articulate any First Amendment overbreadth argument. He concedes that "clearly" security camera surveillance and eye-level, arms-length viewing and photography do not constitute hostile intrusions under the statute. Only "photographing from certain angles" is prohibited. Appellant's Br. at 8-9. He thus concedes that the hypothetical conduct he describes, such as openly photographing or romantically gazing at people, is not outlawed by the statute. Mr. Glas fails to suggest any

protected conduct that is prohibited by this statute.

This is consistent with the statutory analysis. A "hostile intrusion" is a violation of the expectation of privacy accepted as reasonable in the particular circumstances. In a private place, this includes viewing or filming of any kind, because the degree of privacy expected is total. In public places, the expectation of privacy is lower, and the sweep of statutorily forbidden conduct is correspondingly narrowed.

## CONCLUSION

The statute recognizes an expectation of privacy in public places. Mr. Glas has not met his burden of proving the statute is unconstitutional on its face.

We affirm the conviction.

KURTZ, C.J., and SCHULTHEIS, J., concur.