54 P.3d 147 (2002)
147 Wash.2d 410
STATE of Washington, Respondent,
v.
Sean Tyler GLAS, Petitioner.
State of Washington, Respondent,
v.
Richard Lynn Sorrells, Appellant.
Nos. 71514-9, 71571-8.
Supreme Court of Washington, En Banc.
Argued June 27, 2002.
Decided September 19, 2002.
*149 Kenneth W. Sharaga, Seattle, Douglas Ricks, Everett, for Petitioner.
Norm Maleng, King County Prosecutor, Jared Kimball, Deputy, James Whisman, Deputy, Seattle, Ronald Zirkle, Yakima County Prosecutor, Kevin Eilmes, Deputy, Kenneth Ramm, Deputy, Yakima, for Respondent.
*148 BRIDGE, J.
Sean Glas and Richard Sorrells, in separate cases, were each found guilty of voyeurism for taking pictures underneath women's skirts ("upskirt" voyeurism). Glas and Sorrells each contend that Washington's voyeurism statute, RCW 9A.44.115, does not apply to their actions because it does not criminalize upskirt photography in a public place. They both also assert that RCW 9A.44.115 is unconstitutionally overbroad and void for vagueness. We hold that RCW 9A.44.115, as written, does not render unlawful upskirt photography in public places; however we do not find the statute, taken as a whole, unconstitutional.

I
On April 26, 1999, Glas took pictures up the skirts of two women working at the Valley Mall in Union Gap, Washington. Inez Mosier was working in the ladies' department at Sears when Glas caught her attention. Glas was lurking near her and acting suspiciously. Mosier saw a flash out of the corner of her eye and turned around to discover Glas squatting or sitting on the floor a few feet behind her. She later noticed a small, silver camera in his hand. The same day, Shantel Phillips was working at a cart in the main hallway of the mall. As she helped a customer, she heard a click and saw a flash illuminate behind her, level with her knees. She turned and observed Glas retreating with a camera in his hand. Police later confiscated the film, revealing pictures of Mosier's and Phillips' undergarments.
On July 21, 2000, Sorrells attended the Bite of Seattle at Seattle Center with a video camera. Jolene Jang was standing in line to buy ice cream when she noticed Sorrells behind her. Jang thought that Sorrells had his hand on her purse so she reacted and Sorrells fled from the line. A witness later informed police that she had observed Sorrells videotaping underneath little girls' dresses. Police viewed a copy of the videotape from Sorrells' camcorder and discovered images of children and adults, including Jang. Many of the images were taken from ground level, recording up the females' skirts.
Following the bench trial, the trial court found Glas guilty of voyeurism under RCW 9A.44.115. The Court of Appeals, Division Three, affirmed the conviction, despite Glas' claims that the statute was unconstitutional. See State v. Glas, 106 Wash.App. 895, 27 P.3d 216 (2001). Sorrells filed a motion to dismiss his case in King County Superior Court, contending that the voyeurism statute did not apply to pictures taken in a public place. The trial court denied Sorrells' motion and found him guilty on stipulated facts. In light of Glas, Sorrells appealed directly to this court. We accepted review and consolidated the two cases.

II
A. Under RCW 9A.44.115, does a person have a reasonable expectation of privacy in a public place?
Washington's voyeurism statute provides:
A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films another person, without that person's knowledge and consent, while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy.
RCW 9A.44.115(2) (emphasis added). The statute defines a place where a person "would have a reasonable expectation of privacy" as either "[a] place where a reasonable person would believe that he or she could disrobe in privacy, without being concerned that his or her undressing was being photographed or filmed by another;" or "[a] place where one may reasonably expect to be safe *150 from casual or hostile intrusion or surveillance." RCW 9A.44.115(1)(b)(i), (ii).
Both Glas and Sorrells contend that the voyeurism statute was misapplied in their respective cases because the victims were in public places and therefore did not possess a reasonable expectation of privacy. In Glas, both women were employees working in the public area of a shopping mall, while in Sorrells, the woman was standing in a concession line at the Bite of Seattle at the Seattle Center. Although Glas' and Sorrells' actions are reprehensible, we agree that the voyeurism statute, as written, does not prohibit upskirt photography in a public location.
The Court of Appeals in Glas determined that the statutory definition for a place where a person would have a reasonable expectation of privacy created two separate categories of "places." Glas, 106 Wash.App. at 902, 27 P.3d 216. The court applied two general rules of statutory construction: that different language signifies different intent and that no part of a statute should be rendered superfluous. Id. (citing State v. Jackson, 137 Wash.2d 712, 724, 976 P.2d 1229 (1999); Cazzanigi v. Gen. Elec. Credit Corp., 132 Wash.2d 433, 446, 938 P.2d 819 (1997); Dep't of Transp. v. State Employees' Ins. Bd., 97 Wash.2d 454, 458, 645 P.2d 1076 (1982)). Following these rules, the court concluded that the first subsection, RCW 9A.44.115(1)(b)(i), applied to the "traditional venue of the peeping torn," such as bathrooms, bedrooms, changing rooms and tanning booths. Id. at 902-03, 27 P.3d 216. It then concluded that the second subsection, RCW 9A.44.115(1)(b)(ii), applied not to places where one would normally disrobe, but rather to places where one would normally remain clothed. Id. at 903, 27 P.3d 216. Notably the court stated, "People preserve their bodily privacy by wearing clothes in public and undressing in private. It makes no sense to protect the privacy of undressing unless privacy while clothed is presumed." Id. A plain reading of the statute does not support such a construction.
To ascertain legislative intent, a court will first turn to the plain language of the statute. State v. Reding, 119 Wash.2d 685, 690, 835 P.2d 1019 (1992). If the statute is unambiguous, as it is here, it is not subject to judicial interpretation and its meaning is derived from its language alone. State v. Chester, 133 Wash.2d 15, 21, 940 P.2d 1374 (1997). The voyeurism statute protects an individual "while the person ... is in a place where he or she would have a reasonable expectation of privacy." RCW 9A.44.115(2) (emphasis added). Grammatically, it does not make sense to apply this statement to a part of a person's body. It is the person who is in the place, not a part of the person. The two categories of private places modify and define the place where a person may have a reasonable expectation of privacy. Thus, each subsection relates to the place where the person is located (i.e., where the person is "in"). Thus, it is the physical location of the person that is ultimately at issue, not the part of the person's body.
Although the Court of Appeals in Glas concluded that its "interpretation gives effect to a legislative intent to protect the right of people to control the exposure of their bodies to public view," the plain language of the statute does not support such a conclusion. Glas, 106 Wash.App. at 903, 27 P.3d 216. The second definition of a place where a person would have a reasonable expectation of privacy is one where a person would "reasonably expect to be safe from casual or hostile intrusion or surveillance." RCW 9A.44.115(1)(b)(ii). Considering that casual intrusions occur frequently when a person ventures out in public, it is illogical that this subsection would apply to public places. Casual surveillance frequently occurs in public. Therefore, public places could not logically constitute locations where a person could reasonably expect to be safe from casual or hostile intrusion or surveillance.
It is possible to reach a logical reading of the statute while still granting meaning to both subsections defining a "private place." The first subsection applying to "[a] place where a reasonable person would believe that he or she could disrobe in privacy, without being concerned that his or her undressing was being photographed or filmed by another" applies to standard "peeping torn" locations as the Court of Appeals suggests. This would include a person's bedroom, bathroom, *151 a dressing room or a tanning salon. These locations are all places where a person is expected to, and frequently does, disrobe. This definition is not challenged here.
The second subsection, "[a] place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance" applies to locations where a person may not normally disrobe, but if he or she did, he or she would expect a certain level of privacy. These locations could include any room in a person's domicile other than the bedroom or bathroom, such as the kitchen, living room or laundry room; a locker room where someone may undress in front of others, but not expect to have his or her picture taken; or an enclosed office where someone may close the door to breast feed or change for a bike ride commute home. It would also apply to places where someone may not normally disrobe, but would nonetheless expect another not to intrude, either casually or hostilely. An example would include a private suite or office. A person would reasonably expect that another individual would not place a camera under his or her desk to view or film his or her genital region. Thus, this second subsection is necessary and not superfluous because it expands the locations where a person would possess a reasonable expectation of privacy beyond those of a traditional "peeping torn," but not so far as to include public locations.
Therefore, although the Legislature may have intended to cover intrusions of privacy in public places, the plain language of the statute does not accomplish this goal. We "may not add language to a clear statute, even if [this court] believes the Legislature intended something else but failed to express it adequately." Chester, 133 Wash.2d at 21, 940 P.2d 1374 (citing Adams v. Dep't of Soc. & Health Servs., 38 Wash.App. 13, 16, 683 P.2d 1133 (1984)).
Other state courts have faced similar frustration when confronted with acts of voyeurism, but with no statute clearly covering the challenged violations. See generally Lance E. Rothenberg, Re-Thinking Privacy: Peeping Toms, Video Voyeurs, and the Failure of Criminal Law to Recognize a Reasonable Expectation of Privacy in the Public Space, 49 AM. U.L.REV. 1127 (2000). Of these states, a situation in California draws the closest parallel to the case presented here. In 1998, citizens in Orange County were subjected to three incidents of video voyeurism, including one case where the perpetrator followed several dozen women while he attempted to position a gym bag containing a hidden video camera between the woman's legs while she stood in line or shopped in a crowded store. Id. at 1159. Prosecutors determined that California's voyeurism statute was inadequate to cover these incidents. Id. The statute provided:
Any person who looks through a hole or opening, into, or otherwise views, by means of any instrumentality, including, but not limited to, a periscope, telescope, binoculars, camera, motion picture camera, or camcorder, the interior of a bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which the occupant has a reasonable expectation of privacy, with the intent to invade the privacy of a person or persons inside.
Cal.Penal Code § 647(k)(1) (West). Significantly, the statute focused on the location of the incident and did not cover public places.
In response, the California Legislature amended its statute, adding a subsection that focused on the nature of the invasion itself, rather than where the crime was committed. Rothenberg, 49 AM. U.L.REV. at 1160-61; see also David D. Kremenetsky, Insatiable "Up-Skirt" Voyeurs Force California Lawmakers to Expand Privacy Protection in Public Places, 31 McGEORGE L.REV. 285 (2000). The supplemental subsection stated:
Any person who uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another, identifiable person under or through the clothing being worn by that other person, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, with the intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of that person and invade the privacy of that other *152 person, under circumstances in which the other person has a reasonable expectation of privacy.
Cal.Penal Code § 647(k)(2) (West). The key language "under circumstances in which the other person has a reasonable expectation of privacy" differs from the first subsection, which named the place where this privacy is expected, thus leaving the option open to include public places. Although this subsection has its own limitations, such as requiring that the victim be identifiable, it is broader in scope than both the earlier version and Washington's voyeurism statute.[1]
We conclude that the plain language of RCW 9A.44.115 does not cover an expectation of privacy in a public place.
B. Is RCW 9A.44.115 unconstitutionally overbroad?
Both Glas and Sorrells contend that RCW 9A.44.115 is overbroad because it sweeps within its prohibitions constitutionally protected free speech. See City of Tacoma v. Luvene, 118 Wash.2d 826, 827 P.2d 1374 (1992); City of Seattle v. Webster, 115 Wash.2d 635, 641, 802 P.2d 1333 (1990). A third party challenge to a law as overbroad is permissible if the law in question chills or burdens constitutionally protected conduct. Luvene, 118 Wash.2d at 840, 827 P.2d 1374. Courts will permit such a challenge because of the importance of fundamental constitutional rights. Id. (citing State v. Motherwell, 114 Wash.2d 353, 370-71, 788 P.2d 1066 (1990)). Thus, an enactment may be invalidated for overbreadth where it would be unconstitutional as applied to others, even if not as applied to the litigant. Id. This is an exception to the general rule that a litigant cannot rely on hypothetical conduct to argue the unconstitutionality of a statute. State v. Lundquist, 60 Wash.2d 397, 374 P.2d 246 (1962).
"A law is overbroad if it sweeps within its prohibitions constitutionally protected free speech activities. The First Amendment overbreadth doctrine may invalidate a law on its face only if the law is `substantially overbroad.' In determining overbreadth, `a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.' Criminal statutes require particular scrutiny and may be facially invalid if they `make unlawful a substantial amount of constitutionally protected conduct ... even if they also have legitimate application.'"
Webster, 115 Wash.2d at 641, 802 P.2d 1333 (quoting City of Seattle v. Huff, 111 Wash.2d 923, 925, 767 P.2d 572 (1989)).
Glas argues that according to the trial court opinion, which was affirmed by the Court of Appeals, the following activities could be considered a violation of the statute:
1. Viewing or snapping a photograph of an attractive and/or provocatively dressed woman on a public street.
2. Staring at, or snapping a picture of a pretty girl on a public beach.
3. Viewing or photographing a man's legs on a public street.
4. Viewing a woman's clothed form or breast in a public arena.
5. Viewing another person, for romantic purposes.
Glas Pet. for Review at 11.
The trial court in Glas found that the photographs at issue were "hostile intrusions that violated the privacy interest and expectation of the women and that the pictures were taken to arouse or gratify sexual desire on an internet web site." 106 Wash.App. at 899, 27 P.3d 216. However, the statute does not criminalize hostile intrusions of a person's privacy interests. Rather, it criminalizes the viewing, photographing or filming of another person, for sexual arousal or gratification, when the person is in a place where he or she would have a reasonable expectation of safety from casual or hostile intrusion or surveillance. RCW 9A.44.115. Thus, the statute does not require that the viewing or filming be intrusive or hostilethis relates to the expectation of privacy. Nor does the *153 statute require that the viewing or filming be of a part of a person's body normally concealed.
The Court of Appeals joined the trial court in concluding that taking pictures up a woman's skirt constituted a hostile intrusion. RCW 9A.44.115(1)(b)(ii). This interpretation reads a limitation into the statute that is simply not present. The "place" referenced in the statute is one where a person may reasonably expect to be safe from casual or hostile intrusion. It is the physical location that is at issue, not the nature of the intrusion. Once the place is defined, then the conduct occurring to a person within that place is criminalized. Additionally, both the trial court and the Court of Appeals seem to overlook the Legislature's reference to a "casual" intrusion and instead focus on a "hostile" intrusion, a distinction apparently necessary to apply the statute to a public place.
According to the trial court's interpretation of the statute necessary to convict Glas, as affirmed by the Court of Appeals, any "viewing" of a person at a mall, or another public place, based on sexual motivation would be punishable. This follows because the statute defines "views" as "the intentional looking upon of another person for more than a brief period of time, in other than a casual or cursory manner, with the unaided eye or with a device designed or intended to improve visual acuity." RCW 9A.44.115(1)(d). In light of the statutory definition of "view," the lower courts' interpretation of the statute would sweep constitutionally protected conduct within the statute's penumbra because it could encompass simply looking at someone appreciatively or desirously in a public place, such as a restaurant or a bar. Additionally, if the statute is read as the trial court and the Court of Appeals interpret, then the statute would criminalize photographing a person on a public street, regardless of the pose, if the purpose of the photograph was to gratify or arouse sexual desire. These acts provide but a few examples of the potential overbreadth of RCW 9A.44.115.
However, we need not determine that the statute is unconstitutional for overbreadth if we follow the construction previously outlined. A statute that regulates behavior will not be invalidated unless the overbreadth is "`"`both real and substantial in relation to the [statute's] plainly legitimate sweep.'"'" Luvene, 118 Wash.2d at 839-0, 827 P.2d 1374 (quoting Webster, 115 Wash.2d at 641, 802 P.2d 1333 (quoting City of Seattle v. Eze, 111 Wash.2d 22, 31, 759 P.2d 366 (1988) (quoting O'Day v. King County, 109 Wash.2d 796, 804, 749 P.2d 142 (1988)))). Furthermore, "[a] statute or ordinance will be overturned only if the court is unable to place a sufficiently limiting construction on a standardless sweep of legislation." Luvene, 118 Wash.2d at 840, 827 P.2d 1374 (citing Webster, 115 Wash.2d at 641, 802 P.2d 1333). We need merely interpret the plain language of the statute as written to render it constitutional.
Accordingly, we hold that RCW 9A.44.115 is not unconstitutionally overbroad.
C. Is RCW 9A.44.115 void for vagueness?
Glas and Sorrells both contend that the voyeurism statute is void for vagueness. We disagree. A statute is void for vagueness if persons of common intelligence must necessarily guess at its meaning and differ as to its application. Luvene, 118 Wash.2d at 844, 827 P.2d 1374 (citing City of Spokane v. Douglass, 115 Wash.2d 171, 177, 795 P.2d 693 (1990)). A vagueness challenge is rooted in principles of due process: "the need to define prohibited conduct with sufficient specificity to put citizens on notice of what conduct they must avoid, and the need to prevent arbitrary and discriminatory law enforcement." Id. (citing Webster, 115 Wash.2d at 642-43, 802 P.2d 1333; State v. Smith, 111 Wash.2d 1, 4-5, 759 P.2d 372 (1988)).
The Court of Appeals in Glas determined that the statute was not vague because the court could define "hostile intrusion," even though it was not defined in the statute, and any ordinary person would understand that taking a picture up a woman's skirt would constitute a hostile intrusion. Glas, 106 Wash.App. at 904-06, 27 P.3d 216. This interpretation could mean that any place where a woman believed that someone should *154 not look up her dress would be a location where a person would possess a reasonable expectation of privacy. Almost everywhere would be included, both public and private places, leading to potential overbreadth. Such an interpretation could ostensibly criminalize lustful thoughts since the statute covers viewing a person, defined as the "intentional looking upon of another person for more than a brief period of time, in other than a casual or cursory manner," for the purpose of arousing or gratifying sexual desire. RCW 9A.44.115(1)(d).
A court will presume that a statute is constitutional and it will make every presumption in favor of constitutionality where the statute's purpose is to promote safety and welfare, and the statute bears a reasonable and substantial relationship to that purpose. Eze, 111 Wash.2d at 26, 759 P.2d 366; State v. Lee, 135 Wash.2d 369, 390, 957 P.2d 741 (1998). Following this general rule, we need only interpret the statute as written, giving meaning to all of its provisions. In doing so, we need not rely on the definition of "hostile intrusion," to the exclusion of a "casual intrusion" to determine that the statute is not vague.
If the statute is read as written, then casual or hostile intrusion refers to the place where the intrusion occurs, not the intruder's mental intent. Accordingly, the statute would not be vague because it would encompass a place where a person would not expect either a casual or hostile intrusion, including a living room in a private domicile or an enclosed office, but not a public place.
Accordingly, we conclude that RCW 9A.44.115 is not void for vagueness.

III
Both Glas and Sorrells engaged in disgusting and reprehensible behavior. Nevertheless, we hold that Washington's voyeurism statute, RCW 9A.44.115, does not apply to actions taken in purely public places and hence does not prohibit the "upskirt" photographs they took. We also hold that RCW 9A.44.115 is not overbroad as written and refrain from adopting an interpretation of the statute that would imply the requirement of a hostile intrusion against a person's privacy interests. Finally, we hold that the voyeurism statute is not void for vagueness because all of the terms can be defined and given reasonable meaning in the appropriate context.
The Court of Appeals' decision in Glas is reversed; the trial court's decision in Sorrells is reversed.
SMITH, IRELAND and OWENS, JJ., concur.
MADSEN, J., concurs in result only.
ALEXANDER, C.J. (concurring).
I agree with the majority's determination that the provisions of RCW 9A.44.115 do not apply to the actions of the defendants Sean Glas and Richard Sorrells. In both cases their actions, though reprehensible, took place in public where no expectation of privacy could be expected.
I only disagree with the majority insofar as it chooses to make an extended foray into constitutional waters and conclude that RCW 9A.44.115 survives the constitutional challenge made by these defendants. Because we have determined that the plain language of the statute has no application to the conduct of these defendants, it is unnecessary for us to determine if the pertinent statute is or is not constitutional. See State v. Rodgers, 146 Wash.2d 55, 60, 43 P.3d 1 (2002) ("[I]t is a well-established rule of judicial restraint that the issue of the constitutionality of a statute will not be passed upon if the case can be decided without reaching that issue.") (citing State v. Peterson, 133 Wash.2d 885, 894, 948 P.2d 381 (1997) (Talmadge, J., concurring)). We should, in my view, resist the temptation to address the constitutional issues that have been raised by the defendants and decide the two cases before us simply on the basis that the conduct of Glas and Sorrells does not fall within the purview of RCW 9A.44.115.
SANDERS, CHAMBERS and JOHNSON, JJ., concur.
NOTES
[1] Another option is Louisiana's voyeurism statute, which focuses on the unreasonable and offensive nature of the conduct committed, rather than the reasonable expectation of the victim or the location where the crime occurred. See Rothenberg, 49 AM U.L.REV. at 1162-64; La.Rev. Stat. Ann. § 14:283(A) (West 1986).