155 P.3d 188 (2007)
STATE of Washington, Respondent,
v.
Gary Alan BOYD, Appellant.
No. 34158-1-II.
Court of Appeals of Washington, Division 2.
April 10, 2007.
*190 Jodi R. Backlund, Manek R. Mistry, Backlund & Mistry, Olympia, WA, for Appellant.
Jill Landes, Port Townsend, WA, for Respondent.
HOUGHTON, C.J.
¶ 1 A jury convicted Gary Boyd of voyeurism and attempted voyeurism for taking and attempting to take "upskirt" photographs of high school girls. On appeal, he argues that the "intimate areas" element of the voyeurism statute is unconstitutionally vague and overbroad. He also argues that the trial court gave the jury inadequate instructions because (1) it did not include a Petrich instruction and (2) the "knowledge" instruction misled the jury and failed to follow the statutory language. State v. Petrich, 101 Wash.2d 566, 683 P.2d 173 (1984). Because the voyeurism statute is constitutional and the trial court properly instructed the jury, we affirm.

FACTS
¶ 2 Boyd worked as a part-time custodian at Port Angeles High School. In April 2004, students began to hear rumors that he was trying to look up girls' skirts and take pictures. Two students saw him follow a girl, who was wearing a skirt, up the stairs as he held a camera. When the students got the girl's attention, Boyd turned around and pretended to pick something up, hiding the camera. The students reported the incident to the principal.
¶ 3 The principal met with Boyd to discuss the allegations. She explained what the students had told her and asked if he had a camera. He admitted he did and gave it to the assistant principal, showing him how to work the camera to view the images.
¶ 4 The camera contained several "upskirt" photographs of young female students. He claimed that he had brought the camera to school to take pictures of students misbehaving, but he admitted that he did not have any photographs of student misconduct. He also said he had never done anything like that before, that it was a "spur of the moment thing." Report of Proceedings (RP) (May 24, 2005) at 88.
¶ 5 The police arrested Boyd and the State charged him with one count of voyeurism and five counts of attempted voyeurism. Each count alleged an incident involving a different girl.
¶ 6 A jury trial ensued. In support of the charges, the State presented copies of the photographs recovered from Boyd's camera. Each photograph depicted a different girl, except exhibits 7 and 8, which showed the same victim.
¶ 7 The trial court instructed the jury that each count charged a separate crime and that it must decide each count separately. On the attempted voyeurism charges, the trial court instructed the jury:

*191 To convict the Defendant of the crime of ATTEMPTED VOYEURISM as charged in Counts II, III, V and VI, each of the following elements of the crime must be proved beyond a reasonable doubt. Each count must involve a separate and discrete act.
1. That on or about a period of time between January 1, 2004, and April 26, 2004, the Defendant did an act which was a substantial step toward the commission of VOYEURISM;
2. That the act was done with the intent to commit VOYEURISM; and
3. That the acts occurred in the State of Washington.
Clerk's Papers (CP) at 40.
¶ 8 The trial court and counsel extensively debated the appropriate wording of the "to convict" instruction. Boyd did not object and did not request a Petrich instruction.
¶ 9 On the element of knowledge, the trial court instructed the jury:
A person knows or acts knowingly or with knowledge when he or she is aware of a fact, facts or circumstances or result described by law as being a crime, whether or not the person is aware that the fact, circumstance or result is a crime.
If a person has information which would lead a reasonable person in the same situation to believe that facts exist which are described by law as being a crime, the jury is permitted but not required to find that he or she acted with knowledge.
Acting knowingly or with knowledge is also established if a person acts intentionally.
CP at 37.
¶ 10 The trial court then gave the standard intent instruction: "A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime, whether or not the person is aware that the result is a crime." CP at 38. Boyd did not object.
¶ 11 At the close of the State's case, the trial court granted Boyd's motion to dismiss on one count of attempted voyeurism and submitted the remaining counts to the jury. Because the jury could not reach a verdict on three of the attempted voyeurism counts, the trial court declared a mistrial on those charges. The jury convicted Boyd of voyeurism and one count of attempted voyeurism and he appeals.

ANALYSIS

CONSTITUTIONALITY OF THE VOYEURISM STATUTE
¶ 12 Boyd first contends that the "intimate areas" portion of the voyeurism statute is unconstitutionally vague and overbroad on its face. He argues that the meaning of "intimate areas" depends on the victim's subjective intent and that the statute criminalizes a substantial amount of protected speech. Because the trial court did not instruct the jury to consider only conduct not protected by the First Amendment, Boyd urges us to reverse his conviction and dismiss the case.
¶ 13 "We review the constitutionality of a statute de novo." State v. Eckblad, 152 Wash.2d 515, 518, 98 P.3d 1184 (2004). "A court will presume that a statute is constitutional and it will make every presumption in favor of constitutionality where the statute's purpose is to promote safety and welfare, and the statute bears a reasonable and substantial relationship to that purpose." State v. Glas, 147 Wash.2d 410, 422, 54 P.3d 147 (2002). The person making a vagueness challenge must prove the statute is unconstitutional beyond a reasonable doubt. City of Spokane v. Douglass, 115 Wash.2d 171, 177, 795 P.2d 693 (1990).
¶ 14 A facial challenge asserts that the statutory language is "`so loose and obscure that [it] cannot be clearly applied in any context'" and is incapable of any constitutional application. Douglass, 115 Wash.2d at 182 n. 7, 795 P.2d 693 (quoting Basiardanes v. City of Galveston, 682 F.2d 1203, 1210 (5th Cir.1982)). Courts permit facial challenges only when the statute implicates First Amendment activity. See Douglass, 115 Wash.2d at 182, 795 P.2d 693. Because photography is arguably a medium of expression the First Amendment protects, we consider Boyd's facial challenge to the voyeurism *192 statute. See State v. Stevenson, 128 Wash.App. 179, 189 n. 7, 114 P.3d 699 (2005).

A. Vagueness
¶ 15 "A statute is unconstitutionally vague if [it] does not (1) define the criminal offense with sufficient definiteness such that ordinary persons understand what conduct is proscribed or (2) provide ascertainable standards of guilt to protect against arbitrary enforcement." Stevenson, 128 Wash.App. at 188, 114 P.3d 699.
¶ 16 A statute is indefinite "if persons of common intelligence must necessarily guess at its meaning and differ as to its application." Glas, 147 Wash.2d at 421, 54 P.3d 147. In analyzing a statute for vagueness, we examine the context of the enactment as a whole, giving the language a "`sensible, meaningful, and practical interpretation'" to determine whether it gives fair warning of the proscribed conduct. Stevenson, 128 Wash.App. at 188, 114 P.3d 699 (quoting Douglass, 115 Wash.2d at 180, 795 P.2d 693).
¶ 17 Alternatively, a statute is unconstitutionally vague if it "`invites an inordinate amount of police discretion'" by containing terms that are inherently subjective. Stevenson, 128 Wash.App. at 188, 114 P.3d 699 (quoting Douglass, 115 Wash.2d at 181, 795 P.2d 693). A statute that does not provide adequate standards of enforcement will not satisfy the "arbitrary enforcement" prong. Stevenson, 128 Wash.App. at 189, 114 P.3d 699.
¶ 18 Washington's voyeurism statute has twice survived constitutional challenges. See Glas, 147 Wash.2d 410, 54 P.3d 147; Stevenson, 128 Wash.App. 179, 114 P.3d 699. But no case has analyzed the "intimate areas" provision, which the legislature added in 2003. Laws of 2003, ch. 213, § 1.
¶ 19 Prohibitions against voyeurism protect individual bodily privacy as well as intrusions into geographic areas where a person has a reasonable expectation of privacy.[1] RCW 9A.44.115(2)(b) provides,
A person commits the crime of voyeurism if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films . . . [t]he intimate areas of another person without that person's knowledge and consent and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.
The statute further defines "intimate areas" as "any portion of a person's body or undergarments that is covered by clothing and intended to be protected from public view." RCW 9A.44.115(1)(a).
¶ 20 Boyd claims that subsection (b) is vague because whether conduct amounts to voyeurism depends on the victim's subjective intent. He argues that an area of the body or underclothing constitutes an "intimate area" only if the victim covers that area with the intent to protect it from public view. But he asserts, because different people may dress with different sensibilities, a person would have to guess whether viewing or photographing another would be prohibited by the statute. We disagree.
¶ 21 Reasonable individuals would not differ in understanding what the statute prohibits. When a woman puts on clothing, she expresses her intent that certain areas of her body are not open to public view. The statute prohibits others from intruding into those covered areas. If the statute incorporates a subjective intent element, that intent is readily discernable to all viewers in the coverage the clothing provides. When a woman wears a skirt that reaches above her knees, she clearly expresses her intent that public eyes may not peer further into the covered areas. The statute provides sufficient guidance in all circumstances that reasonable persons will not be required to guess what conduct is prohibited.
*193 ¶ 22 Boyd suggests that because a person must intend to protect an intimate area from public view, the clothing alone insufficiently gives notice of what is prohibited. For example, he argues that a high school student and a prostitute may wear the same short skirt, but one will intend to keep her underwear hidden while the other will not.
¶ 23 But we construe the term "intimate areas" in the context of the entire statute. Stevenson, 128 Wash.App. at 188, 114 P.3d 699. The unwanted viewing of intimate areas is prohibited only when it occurs under circumstances where the person has a reasonable expectation of privacy. RCW 9A.44.115(2)(b). Thus, when a student dons a skirt, the scope of her expectation of privacy depends on the circumstances. If she climbs a flight of stairs, she may reasonably expect that people standing beneath her may incidentally glimpse parts of her body above the hemline. By wearing a skirt, she does not implicitly authorize others to attempt to view the hidden parts of her body. The statute simply effectuates the commonsense notion that "a woman who wears a skirt possesses a reasonable expectation, regardless of whether she is in a closed changing room or in a public shopping mall food court, that technology will not be used to catch a glimpse of her underwear." Clay Calvert, Revisiting the Voyeurism Value in the First Amendment: From the Sexually Sordid to the Details of Death, 27 SEATTLE U.L.REV. 721, 730 (2004).
¶ 24 Furthermore, Boyd asserts a misplaced reliance on State v. Williams, 144 Wash.2d 197, 26 P.3d 890 (2001). In Williams, our Supreme Court found unconstitutionally vague that portion of the criminal harassment statute that prohibits "`any other [malicious] act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety.'" 144 Wash.2d at 203, 26 P.3d 890 (emphasis omitted) (quoting former RCW 9A.46.020(1)(a)(iv) (1992)). The statute did not define "mental health," nor did it specify whether the prohibition covered threats that caused simple irritation or emotional discomfort or only threats that caused a diagnosable mental condition. Williams, 144 Wash.2d at 204, 26 P.3d 890. Accordingly, the Court concluded that the statute did not provide sufficient guidance to the public or to law enforcement. Williams, 144 Wash.2d at 205-06, 26 P.3d 890.
¶ 25 Here, by contrast, the "intimate areas" provision is well defined, sufficiently putting the public and law enforcement on notice of the prohibited conduct. Read in a sensible and practical manner, the statute prohibits viewing, photographing or filming the parts of a person's body that are covered by clothing, under circumstances where the person can reasonably expect to be free from intrusion into those covered areas. Its terms are not subjective or discretionary because any ordinary viewer can ascertain the scope of the protected area.
¶ 26 In this case, the student victims all wore skirts that covered their underwear and thighs. Their choice of clothing put the public on notice that they intended to keep the covered areas private, and their expectation of privacy was reasonable. The testimony, and the photographs themselves, suggest that Boyd went to extraordinary lengths to position himself and his camera so that he could peer up the students' skirts. His conduct falls squarely within the statutory prohibition and we reject his vagueness challenge.

B. Overbreadth
¶ 27 Boyd next argues that the voyeurism statute is unconstitutionally overbroad because it prohibits a substantial amount of protected speech. Again, we disagree.
¶ 28 An overbroad law sweeps within its prohibitions constitutionally protected free speech activities. City of Tacoma v. Luvene, 118 Wash.2d 826, 839, 827 P.2d 1374 (1992). To determine whether a statute is overbroad, we first consider whether it reaches a substantial amount of constitutionally protected conduct. Luvene, 118 Wash.2d at 839, 827 P.2d 1374. A statute regulating behavior will be invalidated only if the overbreadth is substantial in relation to the statute's legitimate scope. Glas, 147 Wash.2d at 421, 54 P.3d 147. Moreover, the statute will be overturned only if we cannot *194 construe it to limit its reach. Luvene, 118 Wash.2d at 840, 827 P.2d 1374.
¶ 29 Boyd contends that the voyeurism statute broadly prohibits any viewing, photography, or filming of a person in a public place and such activities are "clearly protected by the First Amendment." Appellant's Br. at 18. He argues that because the statute can be interpreted broadly to prohibit viewing or photographing the exterior of a person's clothing, we must construe it to extend only to the skin or undergarments.
¶ 30 Boyd correctly notes that the definition of "intimate areas" is not limited to the skin or underclothing, rather refers to "any portion of a person's body or undergarments that is covered by clothing and intended to be protected from public view." RCW 9A.44.115(1)(a) (emphasis added). But this does not mean that the criminal prohibition extends to viewing, photographing, or filming the exterior of a person's clothing in public.
¶ 31 We interpret the statute as it is written, giving meaning to all of its provisions rather than analyzing its terms piecemeal. Glas, 147 Wash.2d at 422, 54 P.3d 147. The voyeurism statute prohibits viewing, photographing, or filming another's intimate areas only under circumstances when the person has a reasonable expectation of privacy. RCW 9A.44.115(2)(b). A person in a public place does not have a reasonable expectation of privacy in the exterior of his or her clothing because it is open to public view. Thus, the plain language of the statute does not permit the broad interpretation that Boyd proposes.
¶ 32 As we read the statute, it cannot reasonably be construed to reach a substantial amount of First Amendment activity. It prohibits only unwelcome, uninvited intrusions into a person's bodily privacy. Because the voyeurism statute does not prohibit constitutionally protected activity, it is not fatally overbroad and Boyd's argument fails.

PETRICH INSTRUCTION
¶ 33 Because the State introduced two photographs of the same victim to establish voyeurism, Boyd next contends that the trial court erred in failing to instruct the jury according to Petrich. He also claims that a Petrich instruction was required to differentiate the attempted voyeurism charges. The State responds that a Petrich instruction was not required because both photographs comprised a continual course of conduct. As to the attempt charges, each was related to a specific victim and distinguished from the other acts. The State is correct.
¶ 34 We review the adequacy of jury instructions de novo as a question of law. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995), rev'd on other grounds in Pirtle v. Morgan, 313 F.3d 1160 (9th Cir.2002). Jury instructions are sufficient if they are supported by substantial evidence; allow the parties to argue their theories of the case; and, when read as a whole, properly inform the jury of the applicable law. State v. Riley, 137 Wash.2d 904, 908 n. 1, 909, 976 P.2d 624 (1999).
¶ 35 In Petrich, our Supreme Court held that when the State presents evidence of several distinct criminal acts and charges the defendant with only a single crime, the trial court must instruct the jury that it must unanimously agree that the same underlying criminal act has been proven beyond a reasonable doubt. Petrich, 101 Wash.2d at 572, 683 P.2d 173. Failure to give a required Petrich instruction is constitutional error that can be raised for the first time on appeal because there is a possibility that jurors relied on different incidents to convict, resulting in a lack of unanimity on all the elements of the crime. State v. Kitchen, 110 Wash.2d 403, 411, 756 P.2d 105 (1988).
¶ 36 But a Petrich instruction need not be given when the evidence demonstrates a continual course of conduct rather than several distinct acts. 101 Wash.2d at 571, 683 P.2d 173. To determine whether the State may charge one continuing offense, we evaluate the facts in a commonsense manner. State v. Elliott, 114 Wash.2d 6, 14, 785 P.2d 440 (1990); Petrich, 101 Wash.2d at 571, 683 P.2d 173.
¶ 37 In this case, the State alleged multiple acts of attempted voyeurism, and each count alleged a single incident against a different victim. It supported the allegations *195 with one photograph of each victim. The testimony and photograph of each victim could only support the charge in the information pertaining to that victim. Thus, the trial court need not give a Petrich instruction as to the attempted voyeurism charges because the counts were distinguished by victim and the State did not provide evidence of multiple acts against any single victim.
¶ 38 Likewise, no Petrich instruction was required as to the voyeurism charge. Although the State submitted two photographs of the same victim to prove the incident occurred, the victim testified that both photographs were taken while she was going up the stairs to class. The photographs themselves show the victim in the same clothing, carrying the same bag, next to the same person and apparently in the same place. The evidence does not establish multiple acts of voyeurism, rather one incident when Boyd rapidly tried to take multiple pictures of the same girl. See People v. Mota, 115 Cal.App.3d 227, 233, 171 Cal.Rptr. 212 (1981) (multiple acts of rape were a continuous course of conduct because they occurred within an hour's time in the back of a van), cited in Petrich, 101 Wash.2d at 570-71, 683 P.2d 173. Because the photographs demonstrated a continuous course of conduct, Boyd's argument fails.

KNOWLEDGE INSTRUCTION
¶ 39 Boyd also challenges the knowledge instruction on several grounds. First, relying on State v. Goble, 131 Wash.App. 194, 126 P.3d 821 (2005), he argues that the trial court erred in instructing the jury that "[a]cting knowingly or with knowledge also is established if a person acts intentionally." CP at 37. Boyd argues that this created a mandatory presumption requiring the jury to find that he knowingly photographed the victim's intimate area based on any intentional act. He further argues that the instruction is confusing because it does not track the statutory language.
¶ 40 We recently rejected identical arguments in State v. Gerdts, ____ Wash.App. ____, 150 P.3d 627 (2007). There we held that Goble only applies when the State must prove two mens rea elements. Gerdts, 150 P.3d at 631. Because here the State was only required to prove Boyd acted knowingly, the knowledge instruction does not confuse two separate elements and therefore does not create a mandatory presumption. Gerdts, 150 P.3d at 631. We also rejected the argument that the instruction is confusing because it fails to track the statutory language, holding that the instruction properly informed the jury of the applicable law. Gerdts, 150 P.3d at 632. Consistent with Gerdts, we reject Boyd's arguments and hold that the trial court did not err in instructing the jury.
¶ 41 Affirmed.[2]
We concur: VAN DEREN and PENOYAR, JJ.
NOTES
[1] The voyeurism statute establishes two kinds of criminal acts. The first kind of voyeurism involves a visual intrusion into a geographical area where the victim would have a reasonable expectation of privacy, such as a private dwelling or office. RCW 9A.44.115(2)(a); Glas, 147 Wash.2d at 416-17, 54 P.3d 147 (explaining that the former version of the voyeurism statute, which is now codified as subpart (a), extends only to intrusions into private places). That subsection is not at issue in this case.
[2] Boyd raises three additional claims in his Statement of Additional Grounds. RAP 10.10. He argues that he could not have "knowingly" viewed another's intimate area because the view-finder of his camera was not visible when he took the pictures. He also contends that the requirement that the viewing take place for the purpose of sexual gratification requires speculation into his intentions. Last, he questions how a person who wears a skirt can have a reasonable expectation of privacy while ascending a staircase. Because his additional arguments lack merit, we reject them without further discussion.